Hearing Date & Time For Bid Procedures:  October 9, 2014 at 10:00 a.m.
Objection Deadline For Bid Procedures:  October 2, 2014 at 5:00 p.m.

Sale Hearing Date and Time:  To Be Determined
Objection Deadline for Sale Hearing:  To Be Determined

Jil Mazer-Marino, Esq.
**MEYER, SUOZZI, ENGLISH & KLEIN, P.C.**
**990 Stewart Avenue, Suite 300**
**P.O. Box 9194**
**Garden City, New York 11530-9194**
**Telephone:  (516) 741-6565**
**Facsimile:   (516) 741-6706**

*Proposed Counsel for the Chapter 7 Trustee*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------X

In re:

HUKKSTER, INC.,

Debtor.
-------------------------------------------------------------------X

Chapter 7

14-12464 (SHL)

**CHAPTER 7 TRUSTEE'S MOTION, PURSUANT TO 11 U.S.C. §§ 105 AND 363 AND RULES 2002, 4001, 6004, AND 9008 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE, SEEKING ENTRY OF ORDERS:  (I) APPROVING BID PROCEDURES, SCHEDULING AN AUCTION AND SALE HEARING, AND APPROVING RELATED NOTICES; AND (II) APPROVING THE SALE OF THE ESTATE'S ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS AND ENCUMBRANCES AND GRANTING RELATED RELIEF**

Jil Mazer-Marino, the chapter 7 trustee (the "<u>Trustee</u>") for the above-captioned debtor (the "<u>Debtor</u>") hereby submits this motion and respectfully sets forth as follows:

**I.**

**RELIEF REQUESTED**

1.    By this motion, the Trustee respectfully requests that the Court grant the following relief in connection with a sale of all or substantially all of the Debtor's assets (the "<u>Assets</u>") to the bidder or bidders who submit the highest or otherwise best offer (the

"**Successful Bidder**").

2.      *First,* pursuant to Rule 9006-1(b) of the Local Rules of the Bankruptcy Court for the Southern District of New York (the "**Local Rules**"), the Trustee is seeking entry of an order (the "**Bid Procedures Order**") in the form attached hereto as Exhibit A: (i) establishing the procedures (the "**Bid Procedures**") for the conduct of an auction (the "**Auction**") of the Assets; (ii) scheduling the hearing to approve a sale (the "**Sale Hearing**"); and (iii) approving the form of notice with respect to the proposed sale of the Assets, the Auction, and the Sale Hearing (the "**Sale Notice**") and the time and manner of service of the Sale Notice.

3.      *Second,* the Trustee requests entry of an order or orders (the "**Sale Order**")[1], that will, *inter alia,* approve the sale of the Assets free and clear of all liens, claims, encumbrances and other interests pursuant to sections 105 and 363(b), (f) and (m) of title 11 of the United States Code (the "**Bankruptcy Code**") and Rules 6004 and 9008 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") in accordance with the terms of a purchase agreement executed by the Successful Bidder, which purchase agreement (the "**Purchase Agreement**") shall be substantially in the form attached to the Bid Procedures (or as may otherwise be sought by such Successful Bidder).

## II.

## JURISDICTION

4.      This Court has subject matter jurisdiction to consider and determine this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

5.      The bases for the relief requested herein are Bankruptcy Code sections 105 and 363, Bankruptcy Rules 2002, 4001, 6004, and 9008, Local Rules 6004-1 and 9006-1, and

---

[1] The proposed form of Sale Order will be filed prior to the Sale Hearing.

General Order M-383 of the Bankruptcy Court for the Southern District of New York.

## III.

## BACKGROUND

### A.    The Bankruptcy Case

6.    On August 27, 2014 (the "**Petition Date**"), the Debtor filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code and the Trustee was appointed interim chapter 7 trustee.

7.    A 341 meeting of creditors is scheduled for October 1, 2014.

8.    The Debtor's schedules disclose secured debt of $1,500.00; priority debt of $16,000.00; and general unsecured debt of $1,620,852.72.

### B.    The Debtor's Business

9.    Hukkster is a shopping tool allowing users to track and mark products and websites, which tool also notifies the user via text or email when the selected product goes on sale.  Hukkster could be accessed by users via website or mobile app.  Based on the Debtor's schedules, the mobile app has been downloaded by 150,000 users.  Upon information and belief, Hukkster's business model anticipated generating revenue from referral fees from retailers, however, Hukkster was unable to general sufficient revenue to remain viable.

10.    Prior to commencing the chapter 7 case, the Debtor ceased operations.  It shut down the website, disabled the mobile app, moved out of its leased premises, and terminated its lease.

### C.    The Assets For Sale

11.    The Trustee intends to make all of the Debtor's Assets available for sale at auction, except for cash and accounts receivable.

12.    The Trustee believes that the Debtor's most valuable assets are:

(i)    Copyright to Desktop Designs: U.S. Copyright Registration No.: TX-7-795-116;

(ii)    Copyright for iOS App: U.S. Copyright Registration No.: TXu 1-889-003;

(iii)   Custom Python Django code base;

(iv)   Domain names, including:

    a.    hukkster.co.in,

    b.    hukkster.co.uk,

    c.    hukkster.com,

    d.    hukkster.it;

(v)    Trademarks, including:

    a.    HUKKSTER, U.S. Registration No.: 4,450,092,

    b.    HUKK, U.S. Registration No.: 4,450,093;

(vi)   Approximately 150,000 iOS app downloads (UDIDs) ("**App Users**");

(vii)  Database containing approximately 300,000 customer names and email addresses ("**Customer List**"); and

(viii) the estate causes of action, including but not limited to preference and fraudulent conveyance claims, if any.

13.    The Trustee will entertain offers to purchase all or less than all of the Assets. The Trustee will entertain offers to purchase the Customer List and the App Users on an exclusive and non-exclusive basis. The Customer List and App User List contain personally identifiable information, as defined in Bankruptcy Code section 101(41A). Accordingly, the Successful Bidder for the Customer List and the App Users may be required to use those Assets in

compliance with the Debtor's privacy policy in effect as of the Petition Date.[2]

## D.     The Marketing Process

14.     Prior to the Petition Date, the Debtor actively marketed its Assets for sale.  The
Debtor provided the Trustee with contact information for the entities it solicited.  The Trustee
has already received expression of interest in certain Assets.  Also, Hukksters' demise has
attracted some notoriety and articles regarding Hukkster have been published in the Wall Street
Journal.  Based on the foregoing, the Trustee has determined not to retain a broker or investment
banker in connection with the Sale. [3]

## E.     Notice of Sale, Auction, Sale Hearing and Related Deadlines

15.     The Trustee proposes the following notice and other procedures to be
implemented in connection with the sale process:

(i)     Notice of Sale, Auction and Sale Hearing.  Within two (2) business days after
entry of the Bid Procedures Order, the Trustee shall:

a.     Provide the Sale Notice, in substantially the form attached as
Exhibit 1 to the Bid Procedures Order, by email, mail, facsimile or overnight
delivery service upon: (a) the Office of the United States Trustee for Region 2; (b)
the Internal Revenue Service; (c) parties in interest who have filed a notice of
appearance in these cases pursuant to Bankruptcy Rule 2002; (d) all known
entities that have previously expressed a bona fide interest in purchasing the
Assets; and (e) each party listed on the Debtor's creditor matrix; and

b.     Publish an advertisement on one occasion in a print or digital
edition of *The New York Times* or *The Wall Street Journal.*

(ii)     Date, Time and Place of Auction. The Trustee proposes that the Auction be
conducted at the offices of Meyer, Suozzi, English and Klein, P.C., 1350 Broadway, Suite 500,

---

[2] The Debtor's privacy policy expressly allows for the sale of personally identifiable information in a bankruptcy
transaction.  *See* Privacy Policy, Disclosure of Your Personal Data ("If another company acquires our company,
business, or our assets, including pursuant to a bankruptcy transaction, that company will possess the Personal Data
collected by it and us and will assume the rights and obligations regarding your Personal Data as described in this
Privacy Policy.")
[3] Capitalized terms used but not defined in this section of the motion shall have the meaning ascribed to them in the
Bid Procedures. The terms herein are subject in all respects to the actual Bid Procedures, however.

New York, New York on or about **November 17, 2014, at 10:00 a.m.** (prevailing Eastern Time) (approximately 40 days after the anticipated entry of the Bid Procedures Order); *provided* that the Trustee may change the location of the Auction upon reasonable notice to Qualified Bidders (defined below) and further *provided* that the Trustee shall have the right to adjourn or cancel the Auction at any time by delivering notice of such adjournment or cancellation to all Qualified Bidders.

(iii)    Date, Time, and Place of Sale Hearing.    The Trustee requests that the Sale Hearing be conducted by the Court on or about **November 20, 2014** (approximately three business days after the conclusion of the Auction), which hearing may be adjourned or rescheduled without prior notice.    At the Sale Hearing, the Trustee will seek Court approval of the Successful Bids and Back-Up Bids.

(iv)    Objection Deadline to Sale Order. Objections to the relief sought in the Sale shall be in writing, filed and served so as to be actually received, with a copy to chambers, no later than seven (7) business days before the Sale Hearing, at 4:00 p.m. prevailing Eastern Time, by (i) the Trustee; and (ii) the United States Trustee for Region 2.

**F.    The Bid Deadline and Bid Procedures**

16.    The Trustee proposes the following procedures in connection with bidding.

(i)    Bid Deadline.    The deadline for a Potential Bidder to submit bids shall be **November 10, 2014** (approximately thirty days after the anticipated entry of the Bid Procedures Order), **2014 at 5:00 p.m. (prevailing Eastern Time)** (the "**Bid Deadline**").

(ii)    Required Bid Materials:    For a bid to be a Qualified Bid, the following items (the "**Required Bid Materials**") must be submitted to the Trustee prior to the Bid Deadline:

> a.    Two executed originals of the purchase agreement and other documents by which the bidder offers to purchase the Assets or any portion thereof in substantially the form of the Purchase Agreement that is attached to the Bid Procedures.

b.    A written acknowledgment that the bid is not subject to any due diligence or financing contingency, is not conditioned on the payment in any circumstances of a break-up fee, expense reimbursement or similar type of payment to the bidder, is irrevocable until entry by the Court of the Sale Order and is not subject to any approvals, consents or conditions except as specified therein.

c.    Delivery by certified check or wire transfer of a good faith deposit in immediately available funds equal to 10% of the proposed purchase price (the "**Deposit**") for the Assets that are the subject of the bid. The Deposit shall be held in escrow and will be refunded on the terms set forth in the Purchase Agreement.

d.    Evidence of sufficient cash or other acceptable forms of currency on hand or written evidence of a commitment for financing or other evidence of the ability to consummate the sale satisfactory to the Trustee.

e.    A written disclosure of the identity of each person or entity that is bidding for the Assets or otherwise participating in connection with such bid and whether such person or entity holds an interest in the Debtor.

f.    Such other information as may be reasonably requested in writing by the Trustee at least two calendar days prior to the Bid Deadline.

(iii)    Selection of Qualified Bids.    To be a Qualified Bid, a bid (including all Required Bid Materials) must:

a.    be received by the Bid Deadline;

b.    not be subject to any due diligence or financing contingency; and

c.    not request or entitle the bidder to any break-up fee, expense reimbursement or similar type of payment; *provided, however,* that the Trustee, in her discretion, may decide to grant break-up fee and expense reimbursement protections to any bidder the Trustee selects as a "Stalking Horse" bidder at any time at least three (3) days prior to the Auction, in accordance with the Bid Procedures.

(iv)    Selection of Qualified Bidder.    A bid received from a potential bidder that includes all of the Required Bid Materials and meets all of the above requirements is *a* "**Qualified Bid**" if the Trustee determines that such bid evidences *a bona fide* interest and ability to purchase the Assets or any portion thereof. A potential bidder that submits a Qualified Bid (a "**Qualified Bidder**") shall be entitled to participate in the Auction. The Trustee reserve the right to contact bidders before or after the Bid Deadline to discuss or clarify the terms of their bids and

to indicate any terms which may need to be modified in order to conform the bid to a Qualified Bid or otherwise evaluate the bid.

(v)    Selection of a Stalking Horse:    At any time at least three (3) days prior to the Auction, the Trustee may enter into one or more purchase agreements (each a "**Stalking Horse Agreement**"), subject to higher and better offers at the Auction, with any bidder or bidders that submits a bid (each a "**Stalking Horse Bidder**") to establish a minimum Qualified Bid at the Auction. The Stalking Horse Agreement may contain certain customary terms and conditions, including expense reimbursement and a break-up fee in an amount to be determined by the Trustee, but in no event shall such break-up fee together with the expense reimbursement exceed 2.5% of the Purchase Price. Prior to the Auction, the Trustee will distribute each Stalking Horse Agreement, if any, to the parties submitting other Qualified Bids. To the extent the Trustee enters into any such Stalking Horse Agreements, the agreement shall be filed on the docket of this case prior to the Auction.

(vi)    Due Diligence. Any person or entity that wishes to conduct due diligence with respect to the Assets must first deliver to the Trustee an executed confidentiality agreement in form and substance reasonably satisfactory to the Trustee.

**G.    The Auction**

17.    If more than one Qualified Bid for all or any portion of the Assets is received by the Trustee before the Bid Deadline, the Trustee shall conduct an auction as set forth below:

(i)    Attendance and Participation. Only a Qualified Bidder who is designated as such by the Trustee and that confirms that it understands the Bid Procedures and has not engaged in any collusion with respect to the bidding or the proposed sale is eligible to participate at the Auction. Only the Trustee, Qualified Bidders and their respective agents, shall be permitted to be present at the Auction.

8

(ii)   <u>Opening Bid and Bid Increments</u>.   Prior to the Auction, the Trustee shall announce the highest and best Qualified Bid(s).   Bidding shall commence at the amount of the highest and best Qualified Bid plus an amount sufficient to satisfy any break up fee, expense reimbursement and minimum overbid.   Qualified Bidders may then submit successive bids higher than the previous bid in increments determined by the Trustee.

(iii)   <u>Trustee's Reservation of Rights Regarding Bids</u>.   The Trustee reserves the right to (a) determine, in her reasonable discretion, which bid is the highest or otherwise best, and (b) reject at any time, without liability, any offer that the Trustee in her reasonable discretion, deems to be (1) inadequate or insufficient, (2) not in conformity with the requirements of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules or procedures set forth therein or in the Bid Procedures Order, or (3) contrary to the best interests of the Debtor's estate and creditors.

(iv)   <u>Selection of Successful Bid and Back-Up Bid</u>.

a.      The Auction shall continue until there is only one bid (or more than one bid for non-overlapping portions of the Assets) that the Trustee determines, and subject to Court approval, is the highest or otherwise best offer for the Assets from among the Qualified Bidders (such offer or offers, the "**Successful Bid**").   Each Qualified Bidder submitting such Successful Bid shall become the "**Successful Bidder**," and shall have such rights and responsibilities of a purchaser, as set forth in the Purchase Agreement, or modified definitive purchase agreement, as applicable. The offer or offers that together constitute the next highest or otherwise best bid(s) will be the "**Back-Up Bid**" and the maker of such a bid will be the "**Back-Up Bidder**."

b.      The Successful Bids and the Back-Up Bids submitted at the Auction shall constitute irrevocable offers and be binding on the Successful Bidder and the Back-Up Bidder from the time the bids are submitted until closing of the sale of the Assets.

(v)   <u>Notice of Successful Bidder</u>.   As soon as practicable after the Auction, the Trustee will file the Auction results on the docket of this case.

(vi)   <u>Good Faith Deposit</u>.   Each Deposit submitted pursuant to the Bid Procedures will be held in escrow by the Trustee and will not become property of the Debtor's estate absent further order of the Court.   Within ten business days following the approval by the Court of the

Successful Bidder and Back-Up Bidder, the Trustee shall return the Deposits made by all bidders other than the Successful Bidder and the Back-Up Bidder.

(vii) <u>Retention of Deposit as Partial Remedy</u>.   If a Successful Bidder or Back-Up Bidder shall fail to consummate an approved sale because of a breach or failure to perform on the part of such Successful Bidder (or Back-Up Bidder), the Trustee shall be entitled to retain such Successful Bidder's (or Back-Up Bidder's) Deposit, in addition to other additional remedies available to the Trustee under applicable law.

**IV.**

**<u>BASIS FOR RELIEF</u>**

**A.    <u>Sale of the Assets</u>**

18.    Section 363 of the Bankruptcy Code provides, in relevant part, that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1).

19.    The Trustee believes that an expeditious sale of the Debtor's assets is the best interests of the Debtor's estate and creditors.

**B.    <u>Sale Free and Clear of Liens, Claims, Encumbrances and Interests</u>**

20.    Pursuant to section 363(f) of the Bankruptcy Code, a debtor in possession may sell property of the estate:

> free and clear of any interest in such property of an entity other than the estate if (1) applicable nonbankruptcy law permits the sale of such property free and clear of such interest, (2) such entity consents, (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property, (4) such interest is in bona fide dispute, or (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

21.    The Trustee does not believe that the Debtor's assets are subject to consensual

liens or security interests; except as set forth in the Debtor's schedules (i.e., the alleged $1,500 secured claim of Silicon Bank).  To the extent, if any, there are liens, claims, or encumbrances (collectively, "**Encumbrances**"), the Trustee believes that the Debtor's assets could be sold free and clear of such Encumbrancs, based on one or more provisions of section 363(f) of the Bankruptcy Code.  Any parties in interest that assert Encumbrances will be adequately protected by having their Encumbrances, if any, attach to the proceeds of the sale in the same order of priority, and with the same validity, force and effect that such parties had prior to the Sale Transaction, subject to any claims and defenses that the Debtor and its estate may possess with respect thereto.  Accordingly, section 363(f) of the Bankruptcy Code authorizes the transfer *and* conveyance of the Assets free and clear of all liens, claims, encumbrances and all other interests.

22.     The Trustee also submits that it is appropriate to sell the Assets free and clear of successor liability claims relating to the Debtor's business.  Such a provision ensures that the Successful Bidder is protected from any claims or lawsuits premised on the theory that the Successful Bidder is a successor in interest to one or more of the Debtors.  Courts have consistently held that a buyer of a debtor's assets pursuant to a section 363 sale takes free from successor liability relating to the debtor's business. *See, e.g., MacArthur Co. v. Johns-Manville Corp. (In re JohnsManville Corp.)*, 837 F.2d 89, 93-94 (2d Cir. 1988) (holding that channeling of claims to proceeds is consistent with intent of sale free and clear under section 363(f) of the Bankruptcy Code); *In re Chrysler LLC*, 405 B.R. 84, 111 (Bankr. S.D.N.Y. 2009) ("[S]uccessor or transferee liability claims against [the purchaser] are encompassed by section 363(f) and are therefore extinguished by the Sale Transaction."), *aff'd*, 567 F.3d 108 (2d Cir. 2009).

C.     **Sale of Personally Identifiable Information**

23.     Bankruptcy Code section 363(b)(1) provides:

The trustee, after notice and a hearing, may use, sell, or lease, other

11

than in the ordinary course of business, property of the estate, except that if the debtor in connection with offering a product or a service discloses to an individual a policy prohibiting the transfer of personally identifiable information about individuals to persons that are not affiliated with the debtor and if such policy is in effect on the date of the commencement of the case, then the trustee may not sell or lease personally identifiable information to any person unless—

(A) such sale or such lease is consistent with such policy; or

(B) after appointment of a consumer privacy ombudsman in accordance with section 332, and after notice and a hearing, the court approves such sale or such lease—

(i) giving due consideration to the facts, circumstances, and conditions of such sale or such lease; and

(ii) finding that no showing was made that such sale or such lease would violate applicable nonbankruptcy law.

24.    The Customer List and the App User List, each of which includes personally identifiable information, will be sold consistent with the Debtor's privacy policy. The Debtor's privacy expressly permits the sale of personally identifiable information in a bankruptcy transaction, provided the purchaser agrees to assume the obligations set forth in the privacy policy. The Trustee intends to condition the sale of the Customer List and the App User List on the purchaser's agreement to comply with the terms of the Debtor's privacy policy.

25.    To the extent, if any, a bidder seeks to purchase personally identifiable information without assuming the obligations of the Debtor's privacy policy, the Trustee reserves the right to seek the appointment of a consumer privacy ombudsman and to sell such assets pursuant to Bankruptcy Code section 363(b)(1)(B).

**D.    Protections as a Good Faith Purchaser**

26.    Section 363(m) of the Bankruptcy Code protects a good-faith purchaser's interest in property purchased from a debtor notwithstanding that the sale conducted under section 363(b) of the Bankruptcy Code is later reversed or modified on appeal. Specifically, section

363(m) provides:

> The reversal or modification on appeal of an authorization under
> [section 363(b)] ... does not affect the validity of a sale ... to an
> entity that purchased ... such property in good faith, whether or not
> such entity knew of the pendency of the appeal, unless such
> authorization and such sale ... were stayed pending appeal.

Section 363(m) of the Bankruptcy Code "affords 'finality to judgment by protecting good faith

purchasers, the innocent third parties who rely on the finality of bankruptcy judgments in making

their offers and bids.'" *Reloeb Co. a LTV Corp. (In re Chateaugay Corp.)*, No. 92 Civ. 7054

(PKL), 1993 WL 159969, at *3 (S.D.N.Y. May 10, 1993) (quoting *AnheuserBusch, Inc. v. Miller*

*(In re Stadium Mgmt. Corp.)*, 895 F.2d 845, 847 (1st Cir. 1990)); *see also Allstate Ins. Co. v.*

*Hughes*, 174 B.R. 884, 888 (S.D.N.Y. 1994) ("Section 363(m) ... provides that good faith

transfers of property will not be affected by the reversal or modification on appeal of an unstayed

order, whether or not the transferee knew of the pendency of the appeal."); *In re Stein & Day,*

*Inc.*, 113 B.R. 157, 162 (Bankr. S.D.N.Y. 1990) ("[P]ursuant to I1 U.S.C. § 363(m), good faith

purchasers are protected from the reversal of a sale on appeal unless there is a stay pending

appeal.").

    27.    The Second Circuit has indicated that, generally, a party would have to show

fraud or collusion between the buyer and the debtor in possession or trustee or other bidders in

order to demonstrate a lack of good faith. *See Kabro Assocs. of W Islip, LLC v. Colony Hill*

*Assocs. (In re Colony Hill Assocs.)*, 111 F.3d 269, 276 (2d Cir. 1997) ("Typically, the

misconduct that would destroy a [buyer]'s good faith status at a judicial sale involves fraud,

collusion between the [buyer] and other bidders or the trustee, or an attempt to take grossly

unfair advantage of other bidders."); *see also In re Angelika Films 57th, Inc.*, Nos. 97 Civ. 2239

(MBM), 97 Civ. 2241 (MBM), 1997 WL 283412, at *7 (S.D.N.Y. 1997) (same; holding that

purchaser's status as an insider was not per se bad faith).

28.    Here, each Successful Bidder will have engaged in the Auction pursuant to the proposed Bid Procedures, and any Purchase Agreement proposed by a Successful Bidder will be the product of arm's length, good-faith negotiations in a competitive bidding process.  Also, at the Sale Hearing, the Trustee intends to make a showing that the Successful Bidder qualifies as a good faith purchaser entitled to the protections of section 363(m) of the Bankruptcy Code.

E.    **Bid Procedures**

29.    Courts have made clear that a trustee's business judgment is entitled to substantial deference with respect to the procedures to be used in selling assets of the estate.  *C.f. Official Comm. of Subordinated Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.)*, 147 B.R. 650, 656-57 (S.D.N.Y. 1992) (noting that overbid procedures and break-up fee arrangements that have been negotiated by a debtor are to be reviewed according to the deferential "business judgment" standard, under which such procedures and arrangements are "presumptively valid"); *In re 995 Fifth Ave. Assocs., L.P.*, 96 B.R. 24, 28 (Bankr. S.D.N.Y. 1989) (holding that the business judgment standard protects break-up fees and other contractual provisions negotiated in good faith).

30.    The Trustee believes the Bid Procedures are fair and lay a level playing field for all potential bidders.  In that connection, the limited Bid Protections that could be afforded to a Stalking Horse are modest and should not chill bidding.  The Trustee submits that the other provisions of the Bid Procedures, including the Required Bid Materials are reasonable and appropriate.

31.    The Trustee believes that the thirty day marketing period, although relatively short, is appropriate. Just prior to the Petition Date, Debtor's management actively marketed the Debtor's Assets and shared the marketing efforts with the Trustee, allowing the Trustee to

14

"piggy back" off of management's efforts.  Also, the Debtor's bankruptcy case has notoriety.

Articles regarding the case have appeared in the *Wall Street Journal* and other digital industry

publications.  The Trustee has already been contacted by potential bidders.  In addition, the

Trustee intends to publish one advertisement and to provide notice of the bid procedures to all

parties that have expressed an interest in purchasing the Debtor's business and that the Trustee

believes could be interested in acquiring the Debtor's business.

**F.**    **Ability to Enter into Stalking Horse Agreement with Bid Protections**

32.    Bankruptcy courts have approved bidding incentives similar to the Break-Up Fee

under the business judgment rule, which proscribes judicial second-guessing of the actions of a

corporation's board of directors taken in good faith and in the exercise of honest judgment. *See*,

*e.g.*, *Integrated Res., Inc.*, 147 B.R. at 656-62 (approving break-up fee expense reimbursement

and noting that break-up fee arrangements that have been negotiated by a debtor are to be

reviewed according to the deferential "business judgment" standard, under which such

procedures and arrangements are "presumptively valid"); *995 Fifth Ave. Assocs.*, 96 B.R. at 28

(respecting the debtors' business judgment that bidding incentives were "legitimately necessary

to convince a 'white knight' to enter the bidding by providing some form of compensation for

the risks it is undertaking") (internal citation and quotation marks omitted).

33.    Courts have authorized debtors in possession to choose a stalking horse bidder

after approval of the Bid Procedures and therefore there is a basis for allowing a chapter 7 trustee

to do the same in certain circumstances. *See, e.g.*, *In re Footstar, Inc.*, No. 04-22350 (Bankr.

S.D.N.Y. Apr. 5, 2004), ECF No. 3 16 (approving a break-up fee if the debtors, after

consultation with the DIP lenders and the creditors' committee, determined in their business

judgment to enter into a stalking horse asset purchase agreement); *In re Rhythms NetConnections*

*Inc.*, No. 01-14283 (Bankr. S.D.NY. Aug. 8, 2001), ECF No. 51 (approving a break-up fee if the

debtors determined in their sound business judgment that it was in the best interests of the estates to enter into a stalking horse asset purchase agreement).

34.    The Trustee is seeking authority to choose one or more Stalking Horse Bidders at any time after entry of the Bid Procedures Order and to offer that bidder the Bidding Protections without the need to return to Court.    The Trustee submits that authorizing the Trustee to designate a Stalking Horse Bidder and to offer modest bid protections is reasonable and appropriate considering the facts and circumstances of this case.    The Trustee has received expressions of interest from entities that desire to be a Stalking Horse Bidder.    The Trustee believes that a Stalking Horse Bidder could help to maximize the value of the assets and requests some flexibility to choose a Stalking Horse Bidder prior to the Auction.    However, the Trustee also believes it is in the best interests of the estate not to delay entry of the Bid Procedures Order to finalize a Stalking Horse Bid.

**G.    Request for Relief Pursuant to Bankruptcy Rules 6004(h)**

35.    Bankruptcy Rule 6004(h) provides that an "order authorizing the use, sale, or lease of property ... is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise."

36.    The Trustee believes that cause exists to waive the stay imposed by Bankruptcy Rule 6004(h).    The speedy transition of the Debtor's business to a new owner could be critical because there is a perception that these Assets may decline in value over time.

## NOTICE

37.    The Trustee provided notice of this motion to the Office of the United States
Trustee and all parties that filed in this case a notice of appearance and request for service of
papers or other pleading in this case.  The Trustee respectfully submits that no further notice of
this motion is necessary.

## NO PRIOR REQUEST

38.    No prior request for the relief sought in this motion has been made to this or any
other court in connection with this chapter 7 case.

## CONCLUSION

**WHEREFORE**, the Trustee respectfully requests that the Court grant the relief
requested herein and such other and further relief as the Court may deem just and appropriate.

**Dated:**    **Garden City, New York**
          **September 9, 2014**

          **MEYER, SUOZZI, ENGLISH & KLEIN, P.C.**

          By: */s/ Jil Mazer-Marino*_____
               **Jil Mazer-Marino, Esq.**
          **990 Stewart Avenue – Suite 300**
          **P.O. Box 9194**
          **Garden City, New York  11530-9194**
          **(516) 741-6565**

          *Proposed Counsel for Hukkster, Inc.*

17

1013593

**EXHIBIT A**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

In re:                                                Chapter 7

HUKKSTER, INC.,                                       14-12464 (SHL)

                    Debtor.
-------------------------------------------------------------X

**ORDER, PURSUANT TO 11 U.S.C. §§ 105 AND 363 AND FED. R. BANKR. P. 2002,
4001, 6004, AND 9008, APPROVING BID PROCEDURES TO BE USED IN
CONNECTION WITH A SALE OF ESTATE'S ASSETS FREE AND CLEAR OF
LIENS, SCHEDULING AN AUCTION AND SALE HEARING, APPROVING
RELATED NOTICES, AND GRANTING RELATED RELIEF**

Upon the *Chapter 7 Trustee's Motion, Pursuant to 11 U.S.C. §§ 105 and 363 and Rules
2002, 4001, 6004, and 9008 of the Federal Rules of Bankruptcy Procedure, Seeking Entry of
Orders:   (I) Approving Bid Procedures, Scheduling the Auction and Sale Hearing, and
Approving Related Notices; and (II) Approving the Sale of the Estate's Assets Free and Clear of
All Liens, Claims and Encumbrances and Granting Related Relief*, dated September 9, 2014 (the
"**Motion**"), of Jil Mazer-Marino, the chapter 7 trustee (the "**Trustee**") of the chapter 7
bankruptcy estate ("**Estate**") of Hukkster, Inc., the above-captioned debtor (the "**Debtor**"); and
the Motion having sought entry, pursuant to sections 105 and 363 of title 11 of the United States
Code (the "**Bankruptcy Code**") and Rules 2002, 4001, 6004 and 9008 of the Federal Rules of
Bankruptcy Procedure (the "**Bankruptcy Rules**"), of (I) an order (the "**Bid Procedures
Order**"), among other things, (A) approving bid procedures (the "**Bid Procedures**") in
connection with the Trustee's proposed sale (the "**Sale**") of the Estate's right, title, and interest in
substantially all of the Debtor's Assets (collectively, the "**Assets**"), (B)  scheduling an auction
(the "**Auction**") and a sale hearing (the "**Sale Hearing**") and approving the form and manner of
notice thereof; and (II) an order (the "**Sale Order**") (A) approving the Trustee's sale of the

Estates' right, title and interest in the Assets to the bidder submitting the highest and best bid free and clear of liens, claims, encumbrances and interests; and (B) granting related relief; and upon the Court's consideration of the Motion, the record of the hearing held on October 9, 2014 with respect to the Motion (the "**Bid Procedures Hearing**"); and good and sufficient notice of the Motion and the Bid Procedures Hearing having been given and no other or further notice of the Motion or the Bid Procedures Hearing being required; and upon all of the proceedings had before the Court; and after due deliberation, and sufficient cause appearing therefor,

IT IS HEREBY FOUND AND DETERMINED THAT:[1]

     A.     The Court has jurisdiction over this Motion, this matter and over the property of the Estate pursuant to 28 U.S.C. §§ 157(a) and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (N), and (O). The statutory predicates for the relief sought herein are Bankruptcy Code sections 105 and 363 and Bankruptcy Rule 2002, 4001, 6004 and 9008. Venue of these cases and the Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

     B.     The relief granted herein is in the best interests of the Estate, all creditors and other parties in interest.

     C.     The notice of the Motion and the Bid Procedures Hearing given by the Trustee constitutes due and sufficient notice thereof.

     D.     The Trustee has articulated good and sufficient reasons for the Court to (i) approve the Bid Procedures, including the authorization to select a Stalking Horse Bidder[2] and to offer any such Stalking Horse Bidder a break up fee, fee reimbursement and other bid

---

[1] Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact to the fullest extent of the law. *See* Fed. R. Bankr. P. 7052.

[2] Capitalized terms not defined herein have the meanings ascribed in the Bid Procedures.

protections; (ii) approve the form and manner of notice of the Auction and the Sale Hearing; and (iii) schedule the date of the Auction and the Sale Hearing.

        E.      The Bid Procedures are reasonable and appropriate and represent the best method for maximizing the realizable value of the Assets.

THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED AS FOLLOWS:

        1.      The Motion is granted, as provided herein.

        2.      The Bid Deadline is **November __, 2014 at 5:00 p.m. (New York time)**.

        3.      The Auction shall be held on **November __, 2014 at 10:00 a.m. (New York time)** at Meyer, Suozzi, English & Klein, P.C., 1350 Broadway, Suite 501, New York, New York or such other location reasonably determined by the Trustee in advance of the Auction, provided that the Trustee may change the location of the Auction upon reasonable notice to Qualified Bidders and further provided that the Trustee shall have the right to adjourn or cancel the Auction at any time by delivering notice of such adjournment or cancellation to all Qualified Bidders.

        4.      The Court shall hold the Sale Hearing on **November __, 2014, at __:__ a.m. (New York time)**, at which time the Court will consider approval of the Sale of the Assets to the Successful Bidder(s) and the Trustee's selection of the Back-Up Bidder(s), and confirm the results of the Auction, if any.

        5.      Objections to the Sale, if any, must be in writing and must be filed and served so as to be actually received by the Bankruptcy Court and the following parties on or before **November __, 2014 at 5:00 p.m. (New York time)** (the "**Objection Deadline**"):

        6.      The failure to file and serve an objection to the Sale by the Objection Deadline shall be a bar to the assertion thereof at the Sale Hearing or thereafter.

7.      The Sale Hearing may be adjourned from time to time without further notice other than by announcement of the adjournment in open Court or the entry of a notice of such adjournment on the Court's docket.

8.      The Trustee is authorized but not directed to enter into one or more Purchase Agreements with one or more Stalking Horse Bidders according to the terms of the Bid Procedures.

9.      If the Trustee designates a Stalking Horse Bidder, any break-up fee and/or expense reimbursement shall constitute a super-priority administrative claim against the Estate pursuant to sections 503(b) and 364(c)(1) of the Bankruptcy Code.

10.     The Trustee is authorized to take any and all actions as contemplated by the Bid Procedures prior to the Auction and the Sale Hearing, including, without limitation, actions to notify creditors or other interested parties regarding the Sale and to obtain any and all necessary consents or approvals regarding the Sale.

11.     Notice of (a) the Motion, (b) the Bid Procedures, (c) the Auction, (d) the Objection Deadline, and (e) the Sale Hearing shall be good and sufficient, and no other or further notice shall be required, if notice is given as follows:  (x) within two (2) business days after entry of this Order, the Trustee or her agents shall: serve a notice, in substantially the form attached hereto as Exhibit 1 (the "**Sale Notice**"), upon (i) the Office of the United States Trustee; (ii) those parties that have requested notice pursuant to Bankruptcy Rule 2002; (iii) all known creditors of the Debtor and all entities known to have asserted any claims against the Assets or the Estate's interest in the Assets and other entities known to have asserted a lien, interest or encumbrance in or upon any of the Assets (without exhibits); and (iv) all known bona fide entities that have previously expressed an interest in purchasing the Assets in the last twelve

4

months preceding the date of the Motion; and (y) within five (5) business days after entry of this Order publish an advertisement one time in a print or digital version of the New York Times or Wall Street Journal.

12.     The Bid Procedures, substantially in the form annexed to the Sale Notice and as Exhibit A and the form of Purchase Agreement attached to the Bid Procedures, are incorporated herein by reference and are hereby approved.  The failure specifically to include or reference a particular provision of the Bid Procedures in this Order shall not diminish or impair the effectiveness of such provision.

13.     This Court shall retain jurisdiction to hear and determine all matters arising from the implementation of this Order.

Dated: New York, New York
         October ___, 2014


_____
HONORABLE SEAN H. LANE

**EXHIBIT 1**

Sale Hearing Date and Time:
Objection Deadline for Sale Hearing:

Jil Mazer-Marino, Esq.
MEYER, SUOZZI, ENGLISH & KLEIN, P.C.
990 Stewart Avenue, Suite 300
P.O. Box 9194
Garden City, New York  11530-9194
Telephone:   (516) 741-6565
Facsimile:    (516) 741-6706
Proposed Attorneys for the Chapter 7 Trustee

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

In re:                                                      Chapter 7

HUKKSTER, INC.,                                             14-12464 (SHL)

                        Debtor.
-------------------------------------------------------------------X

**NOTICE OF MOTION OF THE CHAPTER 7 TRUSTEE, PURSUANT TO 11
U.S.C. §§ 105 AND 363 AND FED. R. BANKR. P. 2002, 4001, 6004 AND 9008
FOR ENTRY OF ORDERS: (I) APPROVING BID PROCEDURES,
SCHEDULING AN AUCTION AND SALE HEARING, AND APPROVING
RELATED NOTICES; AND (II) APPROVING THE SALE OF THE ESTATE'S
ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS AND
ENCUMBRANCES AND GRANTING RELATED RELIEF**

> **PLEASE TAKE NOTICE** that, on September 9, 2014, Jil Mazer-Marino, the chapter 7 trustee (the "**Trustee**") of the chapter 7 estate ("**Estate**") of Hukkster, Inc., the above-captioned debtor (the "**Debtor**"), by her proposed attorneys Meyer, Suozzi, English & Klein, P.C. ("**MSEK**"), filed the *Chapter 7 Trustee's Motion, Pursuant to 11 U.S.C. §§ 105 and 363 and Rules 2002, 4001, 6004, and 9008 of the Federal Rules of Bankruptcy Procedure, Seeking Entry of Orders:  (I) Approving Bid Procedures, Scheduling an Auction and Sale Hearing, and Approving Related Notices; and (II) Approving the Sale of the Estate's Assets Free and Clear of All Liens, Claims and Encumbrances and Granting Related Relief* (the "**Motion**") with the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**").

> **PLEASE TAKE FURTHER NOTICE**, that the Motion seeks, among other things, approval of the Trustee's sale of substantially all of the assets of the Debtor's Estate (the "**Assets**"), with such sale to be free and clear of all liens, claims, encumbrances, and interests and subject to higher and better offers under Bankruptcy Code sections 363(b), (f) and (m).

PLEASE TAKE FURTHER NOTICE that the Trustee is soliciting bids for the Assets. All bids for the Assets must conform to the Bid Procedures annexed hereto as Exhibit A. **ALL BIDS MUST BE DELIVERED SO AS TO BE RECEIVED BY THE TRUSTEE AND MSEK ON OR BEFORE            , 2014 (NEW YORK TIME) AT 5:00 P.M.**

PLEASE TAKE FURTHER NOTICE that if the Trustee timely receives competing bids that are Qualified Bids (as that term is defined in the Bid Procedures), the Trustee may conduct an auction of the Assets (the "**Auction**").

PLEASE TAKE FURTHER NOTICE that the **AUCTION WILL BE HELD ON            , 2014 AT 10:00 A.M.** at the offices of Meyer, Suozzi, English, and Klein, P.C., 1350 Broadway Suite 501, New York, New York 10018. The Auction may be adjourned at the discretion of the Trustee.

PLEASE TAKE FURTHER NOTICE that additional information respecting the Assets and the Auction process may be obtained by contacting MSEK: Phone: 516-741-6565; Fax: 516-741-6706; BankruptcyDept@MSEK.com.

PLEASE TAKE FURTHER NOTICE that a hearing (the "**Sale Hearing**") will be held seeking approval of the sale of the Assets to the Qualified Bidder(s) that the Trustee determines to have submitted the highest or otherwise best bid for the Assets.

PLEASE TAKE FURTHER NOTICE that the **SALE HEARING WILL BE HELD ON            , 2014 AT 9:45 a.m.** or as soon thereafter as counsel can be heard, before the Honorable Sean H. Lane, United States Bankruptcy Judge for the Southern District of New York, at the United States Bankruptcy Court for the Southern District of New York, One Bowling Green, New York, New York, 10004-1408, Courtroom 701. The Sale Hearing may be adjourned, from time to time, without further notice to creditors or parties in interest other than by announcement of the adjournment in open Court or on the Court's docket.

PLEASE TAKE FURTHER NOTICE THAT objections to the relief requested in the Motion, including the Trustee's request to approve the sale of Assets free and clear of all liens, claims, encumbrances and interests, must be in writing, filed, and served so as to be actually received by **            , 2014 AT 5:00 P.M. (NEW YORK TIME)** by the Bankruptcy Court and: (i) Meyer, Suozzi, English & Klein, P.C., 990 Stewart Ave., Suite 300, P.O. Box 9194, Garden City, New York 11530-9194, attn.: Jil Mazer-Marino; and (ii) the United States Trustee, Andy Velez-Rivera, Esq., Office of the United States Trustee, 33 U.S. Federal Office Building, 201 Varick Street, Room 1006, New York, NY 10014.

PLEASE TAKE FURTHER NOTICE that copies of the Motion and the Bid Procedures may be obtained free of charge by (i) contacting the proposed attorneys for the Trustee, Meyer, Suozzi, English & Klein, P.C., 990 Stewart Avenue, Suite 300, Garden City, New York 11530, Phone: 516-741-6565; Fax: 516-741-6706; Bankruptcydept@msek.com; (ii)

accessing the Bankruptcy Court's website at http://www.nysb.uscourts.gov (please note that a PACER password is needed to access documents on the Court's website); and (iii) viewing the docket of these cases at the Clerk of the Court, United States Bankruptcy Court for the Southern District of New York, Alexander Hamilton Custom House, One Bowling Green, New York, New York 10004.

Dated: Garden City, New York
      October __, 2014

                                 MEYER, SUOZZI, ENGLISH & KLEIN P.C.
                                 *Proposed Attorneys for the Chapter 7 Trustee*

                                 By:___*/s/*_____
                                        Jil Mazer-Marino, Esq.
                                 990 Stewart Avenue, Suite 300
                                 P.O. Box 9194
                                 Garden City, New York 11530-9194
                                 Phone: (516) 741-6565
                                 Fax :   (516) 741-6706

**EXHIBIT A**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

In re:                                            Chapter 7

HUKKSTER, INC.,                                   14-12464 (SHL)

                          Debtor.
-------------------------------------------------------------------X

## BID PROCEDURES FOR TRUSTEE'S
## SALE OF SUBSTANTIALLY ALL OF THE DEBTOR'S
## RIGHT, TITLE AND INTEREST IN AND TO ITS ASSETS

**A.    Introduction**

Jil Mazer-Marino, in her capacity as trustee ("**Trustee**") of the chapter 7 bankruptcy estate ("**Estate**") of Hukkster, Inc., the above-captioned debtor (the "**Debtor**"), sets forth the following procedures (the "**Bid Procedures**") to be employed in connection with an auction sale (the "**Auction**") of the Estate's right, title and interest in and to all of the Debtor's assets ("**Assets**").  At a hearing following the Auction (the "**Sale Hearing**"), the Trustee will seek the entry of an order (the "**Sale Order**") from the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") authorizing and approving the sale to the Qualified Bidder(s) (as defined below) that the Trustee determines to have made the highest or otherwise best bid (each, a "**Successful Bidder**").

**B.    Approvals**

The proposed sale shall in all respects be subject to approval by the Bankruptcy Court and in compliance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and other applicable rules and law, including, without limitation, the Local Rules and Orders of the Bankruptcy Court.

**C.    Assets to Be Sold**

The property sold at the Auction shall consist of all of the Estate's right, title, and interest in and to all of the Debtor's assets except cash and accounts receivable.  The Trustee will entertain bids for the Debtor's assets in whole or in part.

**D.    Bid Deadline**

Any person or entity interested in participating in the Auction must submit a Qualified Bid (as defined below) so that it is received on or before **November __, 2014 at 5:00 p.m. (New York Time)** (the "**Bid Deadline**") by the Trustee, Jil Mazer-Marino, c/o Meyer, Suozzi, English

1

& Klein, P.C., 990 Stewart Avenue, Suite 300, P.O. Box 9194, Garden City, NY 11530, (516) 741-6706 (fax), jmazermarino@msek.com.

## E.    Qualified Bids

In order to participate in the bidding process and be deemed a "**Qualified Bidder**," each potential bidder must submit a "**Qualified Bid**" by the Bid Deadline. To constitute a Qualified Bid, a bid must include the following items (the "**Required Bid Materials**"):

(a)    Two executed originals of the purchase agreement and other documents by which the bidder offers to purchase the Assets or any portion thereof in substantially the form of the Purchase Agreement that is attached as **Schedule 1** hereto.

(b)    A written acknowledgment that the bid is not subject to any due diligence or financing contingency, is not conditioned on the payment in any circumstances of a break-up fee, expense reimbursement or similar type of payment to the bidder, is irrevocable until entry by the Court of the Sale Order (unless it is chosen as a Successful Bid or Back-Up Bid (each as defined below)) and is not subject to any approvals, consents or conditions except as specified therein.

(c)    Delivery by certified check or wire transfer of a good faith deposit in immediately available funds equal to 10% of the proposed purchase price (the "**Deposit**") for the Assets that are the subject of the bid. The Deposit shall be held in escrow and will be refunded on the terms set forth below.

(d)    Evidence of sufficient cash or other acceptable forms of currency on hand or written evidence of a commitment for financing or other evidence of the ability to consummate the sale satisfactory to the Trustee with appropriate contact (and any other necessary) information for such financing sources.

(e)    A written disclosure of the identity of each person or entity that is bidding for the Assets or otherwise participating in connection with such bid and whether such person or entity holds an interest in the Debtor.

(f)    Such other information as may be reasonably requested in writing by the Trustee at least two calendar days prior to the Bid Deadline.

In addition, to be a Qualified Bid, a bid must:

(a)    be received by the Bid Deadline;

(b)    not be subject to any due diligence or financing contingency; and

(c)    not request or entitle the bidder to any break-up fee, expense reimbursement or similar type of payment; *provided, however,* that the Trustee, in her discretion, may decide to grant break-up fee and expense reimbursement protections to any bidder the Trustee denotes as a "Stalking Horse" bidder at any time at least three (3) days prior to the Auction, in accordance with the Bid Procedures.

(d)    A bid received from a potential bidder that includes all of the Required Bid Materials and meets all of the above requirements is a "**Qualified Bid**" if the Trustee determines that such bid evidences *a bona fide* interest and ability to purchase the Assets or any portion thereof.  A potential bidder that submits a Qualified Bid (a "**Qualified Bidder**") shall be entitled to participate in the Auction. The Trustee reserves the right to contact bidders before or after the Bid Deadline to discuss or clarify the terms of their bid and to indicate any terms that may need to be modified in order to conform the bid to a Qualified Bid or otherwise to evaluate the bid.

(e)    The Trustee, shall make a determination regarding whether a bid is a Qualified Bid and shall notify bidders whether their bids have been determined to be **Qualified Bids by no later than 5:00 p.m. (New York Time) on _____ __, 2014**.

## F.    <u>Stalking Horse Bidder Expense Reimbursement</u>

At any time at least three (3) days prior to the Auction, the Trustee, may enter into one or more purchase agreements (each, a "**Stalking Horse Agreement**"), subject to higher and better offers at the Auction, with any bidder or bidders that submits a bid (each, a "**Stalking Horse Bidder**") to establish a minimum Qualified Bid at the Auction. The Stalking Horse Agreement may contain certain customary terms and conditions, including expense reimbursement and a break-up fee in an amount to be determined by the Trustee, but in no event shall such break-up fee together with the expense reimbursement exceed 2.5% of the purchase price set forth in such Stalking Horse Agreement.  Prior to the Auction, the Trustee will distribute each Stalking Horse Agreement, if any, to the parties submitting other Qualified Bids. To the extent the Trustee enters into any such Stalking Horse Agreement, the agreement shall be filed on the docket of this case.

## G.    <u>Auction</u>

In the event that the Trustee timely receives one or more Qualified Bids the Trustee shall conduct the Auction.  The Auction shall be conducted at Meyer, Suozzi, English & Klein, P.C., 1350 Broadway, Suite 501, New York, NY 10018 on _____ __, **2014 at 10:00 a.m. (New York Time)**; provided, however, that the Trustee shall have the right to adjourn or cancel the Auction or change the location of the Auction at any time by providing reasonable notice of such cancellation or change of location to all Qualified Bidders.

The Auction shall be governed by the following procedures, subject to modification by the Trustee at the Auction:

(a)    Each Qualified Bidder (including each Stalking Horse Bidder) shall be required to confirm that it has not engaged in any collusion with respect to the bidding or the sale.

(b)    Only a Qualified Bidder who is designated as such by the Trustee and that confirms that it understands the Bid Procedures and has not engaged in any collusion with respect to the bidding or the proposed sale is eligible to participate at the Auction. Only the Trustee, Qualified Bidders and their respective agents, are permitted to be present at the Auction.

3

(c)    Prior to the Auction, the Trustee shall announce the highest and best Qualified Bid(s). Bidding shall commence at the amount of the highest and best Qualified Bid plus an amount sufficient to satisfy any break up fee, expense reimbursement and minimum overbid. Qualified Bidders may then submit successive bids higher than the previous bid in increments to be announced by the Trustee at the Auction. The Trustee reserves the right, to announce reductions or increases in minimum incremental bids (or in valuing such bids) at any time during the Auction.

(d)    The Trustee reserves the right to (i) determine, in her reasonable discretion, which bid is the highest or otherwise best, and (ii) reject at any time, without liability, any offer that the trustee in her reasonable discretion, deems to be (1) inadequate or insufficient, (2) not in conformity with the requirements of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules or procedures set forth therein or in the Bid Procedures Order, or (3) contrary to the best interests of the Debtor's Estate and creditors.

(e)    All Qualified Bidders shall have the right to submit additional bids and make additional modifications to their respective Qualified Bidder, at the Auction to improve such bids.

(f)    The Auction may include individual negotiations between the Trustee and one or more Qualified Bidders and/or open bidding in the presence of all other Qualified Bidders.

(g)    The Auction shall continue until the Trustee determines, subject to Bankruptcy Court approval, that the Estate has received the highest or otherwise best offer or offers for the Assets from among the Qualified Bidders (including the Stalking Horse Bidders) submitted at the Auction (the "**Successful Bid(s)**"). The offer or offers that together constitute the next highest or otherwise best bid(s) will be the "**Back-Up Bid(s)**" and the maker or makers of such bid(s) will be the "**Back-Up Bidder(s)**". In making this decision, the Trustee may consider, without limitation, the amount of the purchase price, the form of consideration being offered, the Qualified Bidder's ability to close a given transaction, the proposed timing thereof, and rights of such Qualified Bidder and the Trustee with respect to the termination thereof, and the net benefit to the Estate. The Qualified Bidder(s) submitting such Successful Bid(s) for the Assets shall become the "**Successful Bidder(s)**," and shall have such rights and responsibilities of a purchaser, as set forth in the Purchase Agreement, as modified.

(h)    The Successful Bid(s) and the Back-Up Bid(s) submitted at the Auction shall constitute irrevocable offers and be binding on the Successful Bidder(s) and the Back-Up Bidder(s) from the time the bids are submitted until the closing of the Sale of the Assets.

(i)    The Trustee intends to sell the Assets to each Successful Bidder upon the approval of such Successful Bid and the applicable Back-Up Bid(s) by the Court after the Sale Hearing. The Trustee's presentation of a particular Successful Bid and Back-Up Bid to the Court for approval does not constitute the Trustee's acceptance of the bid. The

4

Trustee will be deemed to have accepted a bid only when the bid has been approved by the Court at the Sale Hearing.

(j)     After the Auction, but prior to the Sale Hearing, the Successful Bidder(s) and the Back Up Bid(s) shall complete and execute all agreements, contracts, instruments or other documents evidencing and containing the terms and conditions upon which the Successful Bid(s). In addition, each Successful Bidder shall deliver to the Trustee, an amount equal to ten percent (10%) of its Successful Bid, in immediately available funds, minus the Deposit.

## H.    Due Diligence

Any person or entity that wishes to conduct due diligence with respect to the Assets must first deliver to the Trustee an executed confidentiality agreement in form and substance reasonably satisfactory to the Trustee. The executed confidentiality agreement must be signed and transmitted to the Trustee by the person or entity wishing to become a Potential Bidder prior to any dissemination of confidential or proprietary information.

## I.     Reservation of Rights

The Trustee reserves the right, in her reasonable discretion and subject to the exercise of her business judgment, to make alterations to these Bid Procedures and/or to terminate discussions with any and all prospective bidders (including any Stalking Horse Bidders) at any time and without specifying the reasons therefor, but only to the extent not materially inconsistent with the Bid Procedures set forth herein.

## J.     Good Faith Deposits

Each Deposit submitted pursuant to the Bid Procedures will be held in escrow by the Trustee and will not become property of the Debtor's estate absent further order of the Court. Within ten business days following the approval by the Court of each Successful Bidder and Back-Up Bidder, the Trustee shall return the Deposits made by any other Bidders other than the Successful Bidder and the Back-Up Bidder.

If the Successful Bidder(s) or the applicable Back-Up Bidder(s) shall fail to consummate an approved sale because of a breach or failure to perform on the part of such Successful Bidder(s) (or Back-Up Bidder(s), as the case may be), the Trustee shall be entitled to retain such Successful Bidder(s)' (or Back-Up Bidder(s)', as the case may be) Deposit, in addition to other additional remedies available to the Trustee under applicable law.

## K.    Sale Hearing

The Successful Bid(s) (or the Stalking Horse Purchase Agreement, if no Qualified Bid(s) other than that of the Stalking Horse Bidder is received or accepted) will be subject to approval by the Bankruptcy Court. The Sale Hearing will take place on _____ __, 2014 at 9:45 a.m. (New York Time) before the Honorable Sean H. Lane, United States Bankruptcy Judge, at the United States Bankruptcy Court for the Southern District of New York, Alexander Hamilton

Custom House, One Bowling Green, New York, New York 10004.  The Sale Hearing may be adjourned from time to time without further notice to creditors or parties in interest other than by announcement of the adjournment in open Court on the date scheduled for the Sale Hearing or on the Court's docket.

MEYER, SUOZZI, ENGLISH & KLEIN, P.C.
*Proposed Attorneys for Jil Mazer-Marino,*
*the Chapter 7 Trustee*
990 Stewart Avenue, Suite 300
P.O. Box 9194
Garden City, New York  11530

1014631

**SCHEDULE 1**

# ASSET PURCHASE AGREEMENT

This **ASSET PURCHASE AGREEMENT** (this "<u>**Agreement**</u>"), made this ___ day of _____, 2014, is by and between **Jil Mazer-Marino**, not individually but as trustee for the chapter 7 bankruptcy estate of **Hukkster, Inc.,** a Delaware limited liability company and _____, a _____ **[company]** having a principal place of business at _____ ("<u>**Buyer**</u>").

## W I T N E S S E T H :

**WHEREAS**, on August 27, 2014 (the "<u>**Petition Date**</u>"), Hukkster, Inc. ("<u>**Hukkster**</u>" or the "<u>**Debtor**</u>") filed a voluntary petition for relief under chapter 7, title 11 of the United States Code (the "<u>**Bankruptcy Code**</u>") in the United States Bankruptcy Court for the Southern District of New York (the "<u>**Bankruptcy Court**</u>"), Case No. 14-12464 (SHL);

**WHEREAS**, on August 27, 2014, Jil Mazer-Marino (the "<u>**Trustee**</u>" or "<u>**Seller**</u>"), was appointed as interim chapter 7 Trustee for the Debtor;

**WHEREAS,** an order establishing notice, bidding and auction procedures (the "<u>**Bid Procedures Order**</u>") was entered by the Bankruptcy Court on **[date]**;

**WHEREAS**, Trustee desires to sell to Buyer, and Buyer desires to purchase from Seller, the Acquired Assets (defined below), subject to and in accordance with the terms and conditions of this Agreement and the Bid Procedures Order.

**NOW, THEREFORE**, in consideration of the promises and the mutual covenants hereinafter set forth, the parties hereto agree as follows:

## ARTICLE 1. PURCHASE AND SALE OF ASSETS

Section 1.    <u>Sale of Assets</u>. Subject to and in accordance with the terms of this Agreement and entry of the Sale Order (defined in <u>Article 9, Section 2</u>), Seller agrees to sell, transfer and deliver to Buyer, and Buyer agrees to buy from Seller, all of Seller's right, title and interest in and to the assets listed on Schedule 1.1 attached hereto (collectively, the "<u>**Acquired Assets**</u>"). Seller is transferring, selling and delivering only the Acquired Assets and is not transferring, selling or delivering any other asset of whatever nature. All such other assets, including those assets listed on Schedule 1.2 attached hereto, shall be retained by and remain assets of the Debtor's estate. All such assets not being sold or assigned are herein referred to as the "<u>**Excluded Assets**</u>."

Section 2.    <u>Assumption of Liabilities</u>. At the Closing, Buyer shall assume, and Buyer hereby agrees to thereafter pay, perform and discharge when due, only the following liabilities (the "<u>**Assumed Liabilities**</u>"):

(a)    all liabilities of Seller for Transaction Taxes (defined in <u>Article 6, Section 1</u>) payable in connection with the transactions contemplated by this Agreement; and

        (b)    all liabilities and obligations arising on or after the Closing Date (defined in <u>Article 3, Section 1</u>), other than successor liability claims, relating to or arising out of the Acquired Assets.

        Section 3.    <u>Retention of Liabilities</u>.  Buyer is assuming only the Assumed Liabilities and is not assuming any other liability or obligation of whatever nature, whether presently in existence or arising hereafter.  All such other liabilities and obligations shall be retained by and remain liabilities and obligations of the Debtor's estate (all such liabilities and obligations not being assumed are herein referred to as the "**Excluded Liabilities**").

## ARTICLE 2. CONSIDERATION

        Section 1.    <u>Consideration</u>.  The aggregate consideration for the sale and transfer of the Acquired Assets is (a) _____ dollars ($_____) in cash (the "**Purchase Price**"), which shall be payable and deliverable on Closing in accordance with <u>Article 3, Section 3</u> herein; and (b) the assumption by Buyer of the Assumed Liabilities.

        Section 2.    <u>Deposit</u>.  Concurrently with the execution and delivery of this Agreement, Buyer shall, by wire transfer of immediately available funds, transfer to the Seller an aggregate amount equal to _____ dollars ($_____), representing ten percent (10%) of the Purchase Price (such amount, together with all interest earned thereon, if any, the "**Deposit**"), to be held by the Seller in a separate segregated account in accordance with the terms and provisions of this Agreement.  If this Agreement is terminated without the Closing occurring, the Deposit shall be disbursed in accordance with <u>Article 8, Section 2</u>.  If the Closing occurs, the Deposit shall be applied (with interest if any) to the Purchase Price.

## ARTICLE 3. CLOSING AND DELIVERIES

        Section 1.    <u>Closing</u>.  The consummation of the transactions contemplated hereby (the "**Closing**") shall take place, within fifteen (15) Business Days after entry of the Sale Order, or as otherwise may be agreed to by the parties hereto (the "**Closing Date**"), at the offices of Sellers' counsel or at a place otherwise agreed upon by the parties.

        Section 2.    <u>Seller's Deliveries</u>.  At the Closing, Seller shall deliver to Buyer:

        (a)    bills of sale, endorsements, assignments and other instruments of transfer and conveyance necessary to effect the sale, transfer, and assignment of the Acquired Assets to Buyer that are consistent with the terms of this Agreement and reasonably satisfactory in form and substance to counsel for Buyer;

        (b)    possession of the Acquired Assets (to the extent physically deliverable); and

        (c)    a copy of the Sale Order as entered on the docket of the Debtors' bankruptcy cases.

Section 3.    <u>Buyer's Deliveries</u>.  At the Closing:

(a)    Buyer shall pay to Seller the Purchase Price (less the Deposit) by wire transfer of immediately available funds in accordance with wire instructions provided by Seller; and

(b)    Buyer shall execute and deliver to Seller an instrument of assumption of liabilities with respect to the Assumed Liabilities reasonably satisfactory in form and substance to counsel for Seller.  Buyer and Seller may agree that <u>Article 1, Section 2</u> hereof may stand in lieu of a separate instrument.

## ARTICLE 4.  REPRESENTATIONS AND WARRANTIES

Section 1.    <u>Representations and Warranties of Seller</u>.  Seller represents and warrants to Buyer as follows:

(a)    <u>Authorization and Validity</u>.  Seller has all power and authority to enter into this Agreement and, subject to the Bankruptcy Court's entry of the Sale Order, to carry out its obligations hereunder and thereunder.  Subject to the Bankruptcy Court's entry of the Sale Order, the execution and delivery of this Agreement and the performance of the obligations hereunder have been duly authorized by all necessary corporate action of Seller, and no other action on the part of Seller is necessary to authorize such execution, delivery and performance.  This Agreement has been duly executed by Seller and, subject to Bankruptcy Court approval, constitutes Seller's valid and binding obligations, enforceable against Seller in accordance with the terms hereof.

Section 2.    <u>Representations and Warranties of Buyer</u>.  Buyer hereby represents and warrants to Seller as follows:

(a)    <u>Corporate Organization</u>.  Buyer is a _____, validly existing and in good standing under the laws of the jurisdiction of its incorporation, and has all requisite power and authority to own its properties and assets.

(b)    <u>Authorization and Validity of Agreement</u>.  Buyer has all requisite power and authority to enter into this Agreement and to carry out its obligations hereunder.  The execution and delivery of this Agreement and the performance of Buyer's obligations hereunder have been duly authorized by all necessary action by the board of directors (or equivalent) of Buyer, and no other action on the part of Buyer is necessary to authorize such execution, delivery and performance.  This Agreement has been duly executed by Buyer and constitutes the valid and binding obligations of Buyer, enforceable against Buyer in accordance with its terms.

(c)    <u>No Conflict or Violation</u>.  The execution, delivery and performance by Buyer of this Agreement does not and will not violate or conflict with any provision of the organizational documents of Buyer and does not and will not violate any provision of law, or any order applicable to Buyer, nor will it result in a breach of or constitute (with due notice or lapse of time or both) a default under any contract to which Buyer is a party or by which it is bound or to which any of its properties or assets is subject.

3

(d)    Consents and Approvals. The execution, delivery and performance of this Agreement by Buyer does not and will not require the consent or approval of, or filing with, any government or any other Person except (i) as may be required to be obtained by Buyer after the Closing in order to own or operate any of the Acquired Assets; (ii) entry of the Sale Order by the Bankruptcy Court; or (iii) for such consents, approvals and filings, of which the failure to obtain or make would not, individually or in the aggregate, have a Material Adverse Effect on the ability of Buyer to consummate the transactions contemplated hereby.

(e)    Investigation by Buyer. Buyer has conducted its own independent review and analysis of the Acquired Assets and the Assumed Liabilities. Buyer has conducted its own independent review of all orders of, and all motions, pleadings, and other submissions to, the Bankruptcy Court in connection with the Debtors' bankruptcy cases. In entering into this Agreement, Buyer has relied upon its own investigation and analysis as well as Seller's representations and warranties contained in Article 4.1(b) (which are subject to the limitations and restrictions contained in this Agreement), and Buyer (i) acknowledges that neither Seller, the Debtor, nor any of their respective Affiliates or Related Persons makes or has made any representation or warranty, either express or implied, as to the accuracy or completeness of any of the information provided or made available to Buyer or its Affiliates or Related Persons, except for the representations and warranties contained in this Agreement (which are subject to the limitations and restrictions contained in this Agreement); and (ii) agrees, to the fullest extent permitted by law, that none of Seller, the Debtors, nor their respective Affiliates or any of their respective Related Persons shall have any liability or responsibility whatsoever to Buyer or its Affiliates or Related Persons on any basis (including, without limitation, in contract or tort, under federal or state securities laws or otherwise) based upon any information provided or made available, or statements made, to Buyer or its Affiliates or Related Persons (or any omissions therefrom), except for Seller's representations and warranties contained in this Agreement and, with respect to such representations and warranties, subject to the limitations and restrictions contained in this Agreement.

Section 3.    Warranties Exclusive. The parties acknowledge that the representations and warranties contained in Article 4 are the only representations or warranties given by the parties and that all other express or implied warranties are disclaimed. Without limiting the foregoing, Buyer acknowledges that the Acquired Assets are conveyed "AS IS", "WHERE IS" and "WITH ALL FAULTS" and that ALL WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE ARE DISCLAIMED. WITHOUT LIMITING THE FOREGOING, BUYER ACKNOWLEDGES THAT NEITHER SELLER, THE DEBTORS NOR THEIR RESPECTIVE AFFILIATES AND THEIR RESPECTIVE RELATED PERSONS HAVE MADE ANY REPRESENTATION OR WARRANTY CONCERNING (I) ANY USE TO WHICH THE ACQUIRED ASSETS MAY BE PUT, (II) ANY FUTURE REVENUES, COSTS, EXPENDITURES, CASH FLOW, RESULTS OF OPERATIONS, FINANCIAL CONDITION OR PROSPECTS THAT MAY RESULT FROM THE OWNERSHIP, USE OR SALE OF THE ACQUIRED ASSETS OR THE ASSUMPTION OF THE ASSUMED LIABILITIES, (III) ANY OTHER INFORMATION OR DOCUMENTS MADE AVAILABLE TO BUYER OR ITS AFFILIATES OR RELATED PERSONS OR (IV) THE CONDITION OF THE ACQUIRED ASSETS INCLUDING, WITHOUT LIMITATION, COMPLIANCE WITH ANY FEDERAL OR OTHER LAWS.

Section 4.    <u>Survival of Representations and Warranties</u>.  None of the representations or warranties of Seller or Buyer set forth in this Agreement or in any certificate delivered pursuant to <u>Article 7, Sections 1(a) or 2(a)</u> shall survive the Closing.  The parties hereto agree that the representations and warranties of Seller contained in this Agreement shall terminate upon the Closing or upon the earlier termination of this Agreement pursuant to <u>Article 8, Section 1</u> and neither Seller nor Buyer shall have any liability for any breach thereof from and after such termination.

<b>ARTICLE 5.</b>  COVENANTS AND OTHER AGREEMENTS

Section 1.    <u>Covenants of Seller and Buyer</u>.

(a)    <u>Covenants of Seller</u>.

(i)    <u>Approvals</u>.  Seller shall use all commercially reasonable efforts to take, or cause to be taken, all actions, and to do, or cause to be done, all things necessary or proper, consistent with applicable law, to consummate and make effective in an expeditious manner the transactions contemplated hereby.

(ii)    <u>Further Assurances</u>.  At the request and the sole expense of Buyer, at any time after the Closing Date, Seller or its designee, on behalf of Seller, shall execute and deliver such documents as Buyer or its counsel may reasonably request to effectuate the purposes of this Agreement.

(b)    <u>Covenants of Buyer</u>.

(i)    <u>Approvals</u>.  Buyer shall use all commercially reasonable efforts to (A) obtain all consents and approvals of all governments, and all other Persons, required to be obtained by Buyer to effect the transactions contemplated by this Agreement, and (B) take, or cause to be taken, all action, and to do, or cause to be done, all things necessary or proper, consistent with applicable law, to consummate and make effective in an expeditious manner the transactions contemplated hereby.

(ii)    <u>Personally Identifiable Information</u>.  In connection with its purchase of the Acquired Assets which contain personally identifiable information within the meaning of section 363(b) of the Bankruptcy Code, Buyer agrees to: (A) assume all obligations set forth in the Debtor's privacy policy as in effect as of the Petition Date; (B) to abide by all applicable laws and regulations with respect to such information; and (C) to take such additional reasonable actions as may be agreed between Seller and Buyer.

<b>ARTICLE 6.</b>  TAXES

Section 1.    <u>Taxes Related to Purchase of Assets</u>.  All federal, state and local sales and transfer taxes, including, without limitation, all state and local taxes in connection with the transfer of the Acquired Assets, and all recording and filing fees (collectively, "<u>Transaction Taxes</u>") that may be imposed by reason of the sale, transfer, assignment and delivery of the Acquired Assets shall be paid by Buyer.  Transaction Taxes do not include any tax in the nature of an income tax, including without limitation, any capital gains, franchise, excise, inheritance,

5

estate, succession, or gift taxes.  Buyer and Seller agree to cooperate to minimize any such Transaction Taxes and to determine appropriate taxing authorities and amount of Transaction Taxes, if any, payable in connection with the transactions contemplated under this Agreement. Seller agrees to assist Buyer reasonably in the preparation and filing of any and all required returns for or with respect to such Transaction Taxes with any and all appropriate taxing authorities.

Section 2.    <u>Cooperation on Tax Matters</u>.

(a)    Buyer and Seller agree to furnish, or cause to be furnished to each other, (including the execution and delivery of appropriate powers of attorney) as promptly as practicable, such information and assistance relating to the Acquired Assets and the Assumed Liabilities as is reasonably necessary for the preparation and filing of any Tax Return, claim for refund or other filings as required by law relating to tax matters, for the preparation for and proof of facts during any tax audit, for the preparation for any tax protest, for the prosecution or defense of any suit or other proceeding relating to tax matters and for the answer to any governmental or regulatory inquiry relating to tax matters.

(b)    Buyer agrees to retain possession, at its own expense, of all accounting, business, financial and tax records and information (i) relating to the Acquired Assets or the Assumed Liabilities that are in existence on the Closing Date and transferred to Buyer hereunder and (ii) coming into existence after the Closing Date that relate to the Acquired Assets or the Assumed Liabilities before the Closing Date, for a period of at least six (6) years from the Closing Date, and will give Seller (or Seller's designated successor) notice and an opportunity to retain any such records in the event that Buyer determines to destroy or dispose of them after such period.  In addition, from and after the Closing Date, Buyer agrees that it will provide access to Seller, Seller's designated successor and their respective attorneys, accountants and other representatives (after reasonable notice and during normal business hours and without charge) to the books, records, documents and other information relating to the Acquired Assets or the Assumed Liabilities as Seller or Seller's designated successor may reasonably deem necessary to (x) properly prepare for, file, prove, answer, prosecute and/or defend any such Tax Return, claim, filing, tax audit, tax protest, suit, proceeding or answer or (y) administer or complete the Debtor's bankruptcy case.  Such access shall include, without limitation, access to any computerized information retrieval systems relating to the Acquired Assets or the Assumed Liabilities.

Section 3.    <u>Allocation of Purchase Price and Purchase Price Allocation Forms</u>.  The Purchase Price and the Assumed Liabilities will be allocated among the Acquired Assets in accordance with the allocation of the Purchase Price (the "**Allocation**") set forth on Schedule 6.3 to be delivered by Buyer, or Buyer's designated successor, to Seller no later than one (1) business day prior to the Closing.  Any adjustments to the Purchase Price shall result in an adjustment to the Allocation in accordance with section 1060 of the Code and the Treasury Regulations thereunder.  The Allocation, as so adjusted, shall be binding on the parties for all purposes.  Seller and Buyer agree that the transaction will be treated as an asset acquisition for tax purposes.  Seller and Buyer will cooperate in filing with the Internal Revenue Service their respective Forms 8594, including any required amendments or supplements thereto, as provided for in section 1060 of the Code and the Treasury Regulations issued thereunder on a basis

6

consistent with the Allocation, and the Allocation shall be reflected on any Tax Returns required to be filed.  Neither Seller, Seller's designated successor, nor Buyer shall, nor shall they permit their respective Affiliates to, take any position inconsistent with the Form 8594, as appropriately adjusted.

**ARTICLE 7.  CONDITIONS PRECEDENT TO PERFORMANCE BY PARTIES**

Section 1.    Conditions Precedent to Performance by Seller.  The obligation of Seller to consummate the transactions contemplated by this Agreement is subject to the fulfillment, at or before the Closing Date, of the following conditions, any one or more of which (other than the condition contained in Article 7, Section 1(c)) may be waived by Seller in its sole discretion:

(a)    Representations and Warranties of Buyer.    All representations and warranties made by Buyer in Article 4, Section 2 shall be accurate in all material respects on and as of the Closing Date as if again made by Buyer on and as of such date, except for inaccuracies that do not result in a material adverse effect on Buyer's ability to perform its obligations hereunder.

(b)    Performance of the Obligations of Buyer.  Buyer shall have performed in all material respects all obligations required under this Agreement to be performed by it on or before the Closing Date.

(c)    Consents and Approvals.  The Bankruptcy Court shall have entered the Sale Order and no order staying, reversing, modifying or amending the Sale Order shall be in effect on the Closing Date.

(d)    No Violation of Orders.  No preliminary or permanent injunction or other order that declares this Agreement invalid or unenforceable in any respect or which prevents the consummation of the transactions contemplated hereby shall be in effect.

Section 2.    Conditions Precedent to the Performance by Buyer.  The obligations of Buyer to consummate the transactions contemplated by this Agreement are subject to the fulfillment, at or before the Closing Date, of the following conditions, any one or more of which (other than the condition contained in Article 7, Section 2(c)) may be waived by Buyer in its sole discretion:

(a)    Representations and Warranties of Seller.    All representations and warranties made by Seller in Article 4, Section 1 shall be accurate in all material respects on and as of the Closing Date as if again made by Seller on and as of such date, except for inaccuracies that do not result in a Material Adverse Effect.

(b)    Performance of the Obligations of Seller.  Seller shall have performed in all material respects all obligations required under this Agreement to be performed by it on or before the Closing Date.

(c)    Consents and Approvals. The Bankruptcy Court shall have entered the Sale Order, in form and substance satisfactory to Buyer, and no order staying, reversing, modifying or amending the Sale Order shall be in effect on the Closing Date.

(d)     No Violation of Orders.  No preliminary or permanent injunction or other order that declares this Agreement invalid in any respect or prevents the consummation of the transactions contemplated hereby shall be in effect.

## ARTICLE 8.  TERMINATION

Section 1.     Termination.  This Agreement may be terminated at any time prior to the Closing Date by either Seller or Buyer if, other than through a default hereunder by the other party hereto:

(a)     by either Seller or Buyer if the Closing shall not have occurred by _____ __, 2014; provided that Buyer may not terminate this agreement if such deadline shall have been missed on account of a default hereunder by Buyer, and provided further, however, that the Closing deadline in this subsection may be extended by Seller and Buyer upon mutual agreement;

(b)     by Seller if Buyer shall have breached any of its representations, warranties, covenants or agreements contained in this Agreement which would give rise to the failure of a condition set forth in Article 7, which breach cannot be or has not been cured within ten (10) Business Days after the giving of written notice by Seller to Buyer specifying such breach in reasonable detail;

(c)     by Buyer if Seller shall have breached any of its representations, warranties, covenants or agreements contained in this Agreement which would give rise to the failure of a condition set forth in Article 7, which breach cannot be or has not been cured within ten (10) Business Days after the giving of written notice by Buyer to Seller specifying such breach in reasonable detail; or

(d)     by the mutual written consent of Seller and Buyer.

Section 2.     Effect of Termination.  In the event of termination of this Agreement as provided in Article 8, Section 1, this Agreement shall forthwith become void and there shall be no liability on the part of either party other than for the return of the Deposit to Buyer with any interest thereon; provided, however, (i) if the Agreement is terminated under Article 8, Section 1(a) and the Closing deadline was missed on account of default under this Agreement by Buyer, Seller shall retain the Deposit and all interest thereon, if any, in addition to any other rights Seller may have against Buyer; and (ii) if the Agreement is terminated under Article 8, Section 1(c) and Seller is not in breach of the Agreement, Seller shall retain the Deposit and all interest thereon, if any, in addition to any other rights Seller may have against Buyer.  The return of the Deposit by Seller shall be Buyer's sole remedy in the event of a termination by Buyer.

## ARTICLE 9.  BANKRUPTCY COURT MATTERS

Section 1.     Bankruptcy Code 363(b) and (f).  The sale contemplated by this Agreement is to be made in accordance with the provisions of Bankruptcy Code sections 363(b) and (f), with the Acquired Assets being sold free and clear of all liens, claims, interests and

encumbrances of whatever kind or nature (the "**Interests**"), but subject to the Assumed Liabilities, with such Interests, if any to attach to the net proceeds of sale.

Section 2.    Sale Order.  Buyer acknowledges that this Agreement and the transactions contemplated herein are subject to entry of an order approving this Agreement and authorizing the sale of the Acquired Assets free and clear of all Interests (the "**Sale Order**") and this Agreement is of no force or effect as to Seller prior to entry of the Sale Order.  Buyer agrees that it will promptly take such actions as are reasonably requested by Seller to assist Seller in obtaining entry of the Sale Order, including furnishing affidavits or other documents or information for filing with the Bankruptcy Court for the purposes, among others, of demonstrating that Buyer is a "good faith" purchaser under section 363(m) or any other section of the Bankruptcy Code and that the Purchase Price was not controlled by an agreement in violation of section 363(n) or any other section of the Bankruptcy Code.  The Sale Order proposed by Seller to the Bankruptcy Court shall provide that it shall be effective and enforceable immediately upon entry by the Bankruptcy Court notwithstanding rule 6004(d) of the Federal Rules of Bankruptcy Procedure.

Section 3.    Buyer's Back-Up Commitment.  If a competing transaction is approved by the Bankruptcy Court with a bidder or bidders other than Buyer and Buyer has submitted the second highest or best bid for the Acquired Assets, then Buyer shall remain bound to this Agreement, on its existing terms and at the purchase price bid by Buyer at the auction as a back-up bid pursuant to the Bid Procedures Order, unless and until the Competing Transaction is consummated or, if earlier, until the Closing Date deadline set forth in Article 8, section 1(a).

## ARTICLE 10.  MISCELLANEOUS

Section 1.    Successors and Assigns.  Except as otherwise provided in this Agreement, no party hereto shall assign this Agreement or any rights or obligations hereunder without the prior written consent of the other party hereto, and any such attempted assignment without such prior written consent shall be void and of no force and effect.  This Agreement shall inure to the benefit of and shall be binding upon the successors and permitted assigns of the parties hereto, specifically including, without limitation, the designated successor of Seller.

Section 2.    Governing Law; Jurisdiction.  This Agreement shall be construed, performed and enforced in accordance with, and governed by, the laws of the State of New York (without giving effect to the principles of conflicts of laws thereof), except to the extent that the laws of such State are superseded by Federal Law.  The parties hereto irrevocably elect as the sole judicial forum for the adjudication of any matters or disputes arising under or in connection with the Agreement, and consent to the exclusive personal and subject matter jurisdiction of, the Bankruptcy Court.

Section 3.    Expenses.  Each of the parties hereto shall pay its own expenses in connection with this Agreement and the transactions contemplated hereby, including, without limitation, any legal and accounting fees, whether or not the transactions contemplated hereby are consummated, subject to Article 9.  Buyer shall pay the cost of all fees, costs, and expenses associated with recording any assignment of the Acquired Assets.

Section 4.    <u>Broker's and Finder's Fees</u>.  Each of the parties represent and warrant that it has dealt with no broker or finder in connection with any of the transactions contemplated by this Agreement other than _____, whose fees and expenses shall, as between the parties hereto, be the responsibility of Buyer, and, insofar as such party knows, no other broker or other Person is entitled to any commission, finder's fee or similar payment in connection with any of these transactions.

Section 5.    <u>Severability</u>.  In the event that any part of this Agreement is declared by any court or other judicial or administrative body to be null, void or unenforceable, said provision shall survive to the extent it is not so declared, and all of the other provisions of this Agreement shall remain in full force and effect only if, after excluding the portion deemed to be unenforceable, the remaining terms shall provide for the consummation of the transactions contemplated hereby in substantially the same manner as originally set forth at the later of the date this Agreement was executed or last amended.

Section 6.    <u>Notices</u>.

(a)    All notices, requests, demands and other communications under this Agreement shall be in writing and shall be deemed to have been duly given: (i) on the date of service, if served personally on the party to whom notice is to be given; (ii) on the day of transmission, if sent via facsimile transmission to the facsimile number given below, and telephonic confirmation of receipt is obtained promptly after completion of transmission, if prior to 3:00 p.m. on a Business day, and otherwise on the next Business Day; (iii) on the Business Day after delivery to Federal Express or similar overnight courier or the Express Mail service maintained by the United States Postal Service providing for delivery on such Business Day and the procuring of a signed receipt; or (iv) on the fifth day after mailing, if mailed to the party to whom notice is to be given, by first class mail, registered or certified, postage prepaid and properly addressed, to the party as follows:

If to Seller:

Jil Mazer-Marino, Chapter 7 Trustee
c/o Meyer, Suozzi, Engish & Klein, P.C.
990 Stewart Avenue
P.O. Box 9194
Garden City, New York 11530-9194
Facsimile:  516-741-6706

If to Buyer:

_____

(b)    Any party may change its address for the purpose of this <u>Article 10, Section 6</u> by giving the other party written notice of its new address in the manner set forth above.

10

Section 7.    <u>Amendments; Waivers</u>.  This Agreement may be amended or modified, and any of the terms, covenants, representations, warranties or conditions hereof may be waived, only by a written instrument executed by the parties hereto, or in the case of a waiver, by the party waiving compliance.  Any waiver by any party of any condition, or of the breach of any provision, term, covenant, representation or warranty contained in this Agreement, in any one or more instances, shall not be deemed to be or construed as a further or continuing waiver of any such condition, or of the breach of any other provision, term, covenant, representation or warranty of this Agreement.

Section 8.    <u>Entire Agreement</u>.  This Agreement contains the entire understanding between the parties hereto with respect to the transactions contemplated hereby and supersedes and replaces all prior and contemporaneous agreements and understandings, oral or written, with regard to such transactions.  All schedules hereto and any documents and instruments delivered pursuant to any provision hereof are expressly made a part of this Agreement as fully as though completely set forth herein.

Section 9.    <u>No Third Party Beneficiaries</u>.  Nothing in this Agreement is intended to or shall confer any rights or remedies under or by reason of this Agreement on any Persons other than Seller, Seller's designated successor and Buyer and their respective successors and permitted assigns.  Nothing in this Agreement is intended to or shall relieve or discharge the obligations or liability of any third Persons to Seller, Seller's designated successor or Buyer.  This Agreement is not intended to nor shall it give any third Persons any right of subrogation or action over or against Seller or Buyer.

Section 10.    <u>Headings, Interpretation, Gender</u>.  Words used herein, regardless of the number and gender specifically used, shall be deemed and construed to include any other number, singular or plural, and any other gender, masculine, feminine, or neuter, as the context requires.  Whenever the words "include," "includes" or "including" are used in this Agreement, they shall be deemed followed by the words "without limitation."  Neither this Agreement nor any uncertainty or ambiguity herein shall be construed or resolved against Buyer or Seller, whether under any rule of construction or otherwise.  No party to this Agreement shall be considered the draftsman.  On the contrary, this Agreement has been reviewed, negotiated and accepted by all parties and their attorneys and shall be construed and interpreted according to the ordinary meaning of the words so as fairly to accomplish the purposes and intentions of all the parties.  The captions and section headings contained in this Agreement are for convenience of reference only, do not form a part of this Agreement and shall not affect in any way the meaning or interpretation of this Agreement.  All references in this Agreement to "Section" or "Article" shall be deemed to be references to a Section or Article of this Agreement.  All references to "herein" or "hereof" or "hereunder" and similar phrases shall be broadly construed to refer to the entire Agreement and not merely to the specific clause, section, or article.

Section 11.    <u>Counterparts</u>.  This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which shall constitute the same instrument.  Delivery of an executed counterpart to this Agreement by facsimile or .pdf shall have the same force and effect as delivery of an original executed counterpart of this Agreement.

11

Section 12.   <u>Further Action</u>.   Pending the Closing, the parties hereto shall use all reasonable efforts to take, or cause to be taken, all appropriate action, to do or cause to be done all things necessary, proper or advisable under applicable law as may be consistent with the terms of this Agreement, or required to carry out the provisions of this Agreement and consummate and make effective the transactions contemplated by this Agreement, including without limitation the transfer and assignment of the Acquired Assets.

## ARTICLE 11. DEFINITIONS

Section 1.   <u>Certain Terms Defined</u>.   As used in this Agreement, the following terms which are not otherwise defined above, shall have the following meanings:

"<u>Affiliate</u>" means, with respect to any Person, any Person directly or indirectly controlling, controlled by or under direct or indirect common control with such other Person.

"<u>Business Day</u>" means any day other than Saturday, Sunday and any day that is a legal holiday or a day on which banking institutions in New York, New York are authorized by law or other governmental action to close.

"<u>Code</u>" means the Internal Revenue Code of 1986, as amended.

"<u>IRS</u>" means the Internal Revenue Service.

"<u>Material Adverse Effect</u>" means a state of facts, event, change or effect that results in a material adverse effect on the value of the Acquired Assets taken as a whole and considering the reasonable prospects of monetizing the full value of the Acquired Assets, but excludes any state of facts, event, change or effect caused by events, changes or developments relating to (A) changes in economic, regulatory or political conditions generally; or (B) any hostilities, acts of war, military actions, sabotage or terrorism.

"<u>Person</u>" means any individual, corporation, partnership, joint venture, limited liability company, association, joint-stock company, trust, unincorporated organization or government.

"<u>Related Person</u>" means, with respect to any Person, all past, present and future directors, officers, members, managers, stockholders, employees, controlling persons, agents, professionals, attorneys, accountants, investment bankers or representatives of any such Person.

"<u>Tax Return</u>" means any report, return, information return, filing or other information, including any schedules, exhibits or attachments thereto, and any amendments to any of the foregoing required to be filed or maintained in connection with the calculation, determination, assessment or collection of any taxes (including estimated taxes).

*[Signatures are on the following page.]*

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed by their respective officers thereunto duly authorized as of the date first above written.

Jil Mazer-Marino, Chapter 7 Trustee for Hukkster, Inc., as Seller


By:   ___/_____
     Name: Jil Mazer-Marino
     Title:  Chapter 7 Trustee

[                    ], as Buyer


By: _____
     Name:
     Title:

## **SCHEDULES**

Schedule 1.1 –Acquired Assets

Schedule 1.2 – Excluded Assets

All cash or Cash Equivalent

All accounts receivable.

Schedule 6.3 – Allocation of Purchase Price

1013456