UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X

In re:

HUKKSTER, INC.,

                Debtor.

----------------------------------------------------------------X

Chapter 7

14-12464 (SHL)

### ORDER, PURSUANT TO 11 U.S.C. §§ 105 AND 363 AND FED. R. BANKR. P. 2002, 4001, 6004, AND 9008, APPROVING SALE OF ESTATE'S ASSETS FREE AND CLEAR OF LIENS AND GRANTING RELATED RELIEF

Upon the *Chapter 7 Trustee's Motion, Pursuant to 11 U.S.C. §§ 105 and 363 and Rules 2002, 4001, 6004, and 9008 of the Federal Rules of Bankruptcy Procedure, Seeking Entry of Orders: (I) Approving Bid Procedures, Scheduling the Auction and Sale Hearing, and Approving Related Notices; and (II) Approving the Sale of the Estate's Assets Free and Clear of All Liens, Claims and Encumbrances and Granting Related Relief*, dated September 9, 2014 [Dkt. No. 5] (the "**Motion**"), of Jil Mazer-Marino, the chapter 7 trustee (the "**Trustee**") of the chapter 7 bankruptcy estate (the "**Estate**") of Hukkster, Inc., the above-captioned debtor (the "**Debtor**"); and the Motion having sought entry, pursuant to sections 105 and 363 of title 11 of the United States Code (the "**Bankruptcy Code**") and Rules 2002, 4001, 6004 and 9008 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), of (I) an order, among other things, (A) approving bid procedures (the "**Bid Procedures**") in connection with the Trustee's proposed sale (the "**Sale**") of the Estate's right, title, and interest in substantially all of the Debtor's Assets (collectively, the "**Assets**"), (B) scheduling an auction (the "**Auction**") and a sale hearing (the "**Sale Hearing**") and approving the form and manner of notice thereof; and (II) an order (A) approving the Trustee's sale of the Estates' right, title and interest in the Assets to the bidder submitting the highest and best bid free and clear of liens, claims, encumbrances and interests; and (B) granting related relief; and upon the Court's consideration of the Motion, the

record of the hearing held on October 9, 2014 with respect to the Motion (the "**Bid Procedures Hearing**"); and good and sufficient notice of the Motion and the Bid Procedures Hearing having been given and no other or further notice of the Motion or the Bid Procedures Hearing being required; and upon the *Order Pursuant to 11 U.S.C. §§ 105 and 363 and Fed. R. Bankr. P. 2002, 4001, 6004, and 9008, Approving Bid Procedures to be used in Connection with a Sale of Estate's Assets Free and Clear of Liens, Scheduling an Auction and Sale Hearing, Approving Related Notices, and Granting Related Relief*, entered October 16, 2014 [Dkt. No. 11] (the "**Bid Procedures Order**"); and upon the *Order (I) Approving Stipulation Resolving Motion and Extending Bid Deadline and Auction Date and (ii) Adjourning Sale Hearing*, entered November 11, 2014 [Dkt. No. 28] (the "**Bid Extension Order**"), that, among other things, scheduled the Auction for November 24, 2014 and the Sale Hearing for December 10, 2014; and upon all of the proceedings had before the Court; and after due deliberation, and sufficient cause appearing therefor,

IT IS HEREBY FOUND AND DETERMINED THAT[1]

A.     The Court has jurisdiction over the Motion, this matter and over the property of the Estate pursuant to 28 U.S.C. §§ 157(a) and 1334.   This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (N), and (O). The statutory predicates for the relief sought herein are Bankruptcy Code sections 105 and 363 and Bankruptcy Rule 2002, 4001, 6004 and 9008.  Venue of these cases and the Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[1] Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact to the fullest extent of the law.  See Fed. R. Bankr. P. 7052.

B.      The relief granted herein is in the best interests of the Estate, all creditors and other parties in interest.

C.      The notice of the Motion, the Bid Procedures Hearing, the Bid Procedures Order, the Bid Procedures, the Auction, and the Sale Hearing, given by the Trustee constitutes due and sufficient notice thereof.

D.      A reasonable opportunity to object or be heard regarding the relief requested in the Motion has been afforded to all interested persons and entities.

E.      Good and sufficient reasons for approval of the Sale to Jet.com, Inc., (the "**Buyer**") under the terms of the Asset Purchase Agreement attached hereto as Exhibit "A" (the "**APA**") have been articulated, and the relief requested in the Motion is in the best interests of the Estate, its creditors and other parties in interest.

F.      The negotiation of the sale of the Acquired Assets (as such term is defined in the APA) to Buyer was the product of arm's-length, good-faith negotiations.  The APA was negotiated, proposed and entered into by and between the Trustee and Buyer without collusion and from arm's-length bargaining positions.

G.      The consideration payable to the Estate by Buyer for the Acquired Assets was not controlled by any agreement between Buyer and/or any other potential bidders for the Assets and Buyer has not acted in a collusive manner with any person in violation of Bankruptcy Code section 363(n) and neither the Trustee nor Buyer engaged in any conduct that would cause or permit the sale of the Acquired Assets to be avoided under Bankruptcy Code section 363(n).  After giving notice to the Trustee of Buyer's desire to enter into an agreement with eRetail Media LLC ("**eRetail**"), another bidder at the auction, Buyer entered into an agreement with eRetail to sell certain of the Acquired Assets to eRetail, subject to and contingent upon the acquisition of the

Acquired Assets by Buyer. The existence of an agreement between Buyer and eRetail was disclosed to the Trustee and all Bidders on the record of the Auction prior to the close of bidding and no objections were raised by the Trustee or the other bidders at the Auction.

H.    The Buyer is a good faith buyer within the meaning of section 363(m) of the Bankruptcy Code and is therefore entitled to the full protection of that provision.

I.    The Trustee, on behalf of the Estate, had, has, and is hereby granted, (i) full corporate power and authority to execute and deliver the APA and all other documents contemplated thereby, and (ii) all of the corporate power and authority necessary to consummate the Sale. No other or further consents or approvals are required to consummate the Sale.

J.    The transfer of the Acquired Assets hereunder will be a legal, valid, and effective transfer of the Acquired Assets and will vest the Buyer with all right, title, and interest of the Estate to the Acquired Assets free and clear of all liens, claims, encumbrances, obligations, liabilities or interests of any kind or nature whatsoever, if any (collectively, the "**Interests**").

K.    The Buyer's bid for the Acquired Assets constitutes the highest or otherwise best offer received for the Acquired Assets. The Trustee conducted the Auction in accordance with, and has otherwise complied with, the Bid Procedures Order and the Bid Extension Order. The Trustee's marketing of the Assets was reasonable and appropriate considering the facts and circumstances of this chapter 7 case and the nature of the Assets.

L.    Potential bidders had a full, fair and reasonable opportunity to conduct due diligence and submit bids and the Trustee considered any and all bids that were Qualified Bids (as defined in the Bid Procedures).

4

M.      The Auction was duly noticed and conducted in a non-collusive, fair and good faith manner in accordance with the Bid Procedures Order.  At the conclusion of the Auction, the Buyer and Clutch Retail, Inc. were selected as the Successful Bidder and Back-Up Bidder, respectively, as such terms are defined in the Bid Procedures.

N.      The Trustee's determination that Buyer's offer, as memorialized in the APA, constitutes the highest or otherwise best offer for the Acquired Assets constitutes a valid and sound exercise of the Trustee's business judgment.

O.      The Trustee may sell the Acquired Assets free and clear of any Interests of any kind or nature because at least one of the standards set forth in Bankruptcy Code section 363(f)(1)-(5) has been otherwise satisfied with respect to each such Acquired Asset.  Any and all holders of Interests who did not object are deemed to have consented to the sale, free and clear of Interests, pursuant to Bankruptcy Code section 363(f)(2).

P.      Interests, if any, will attach solely to the proceeds of the Sale of the Acquired Assets against or in which such Interests are asserted, subject to the terms of such Interests, with the same validity, force and effect, and in the same order of priority that such Interests now have against the Acquired Assets or their proceeds, subject to any rights, claims and defenses that the Debtor, the Trustee or the Estate may possess with respect thereto.

Q.      The Trustee has made a good and sufficient showing that the Sale must close as soon as possible.

THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED AS FOLLOWS:

1.      The Motion is granted, as provided herein.

2.      Any and all objections to the Motion or to the relief requested therein, if any, that have not been withdrawn, waived, settled, or specifically addressed in this Order, and all reservations of rights, if any, included in such objections, are overruled in all respects on the merits.

3.      To the extent of any inconsistency between this Order and the APA, the terms of this Order shall control.

4.      The Trustee is hereby authorized to sell all of the Estate's right, title and interest, in and to the Acquired Assets to the Buyer for the amount of $65,000.00, plus such other consideration identified in the APA, subject to the terms of the APA and this Order.

5.      The Sale of the Acquired Assets to Buyer is hereby approved and without further order or notice, the Trustee is hereby authorized to take all other and further actions as may be reasonably necessary to implement the Sale.

6.      As of the closing, the Sale will result in a legal, valid, enforceable and effective sale and transfer of the Acquired Assets to the Buyer and shall vest the Buyer with title to such Acquired Assets free and clear of all Interests.

7.      The consideration provided to the Trustee and the Estate in exchange for the Acquired Assets is fair and reasonable and may not be avoided under Bankruptcy Code section 363(n).

8.      The Sale of the Acquired Assets was negotiated by the Trustee in good faith, as that term is used in section 363(m) of the Bankruptcy Code and, accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Transaction shall not affect the validity and enforceability of the Sale of the Acquired Assets, unless such

6

authorization is duly stayed pending such appeal.  Buyer is entitled to all of the benefits and protections afforded by Bankruptcy Code section 363(m).

9.      Pursuant to Bankruptcy Code sections 105(a) and 363(f), as of the closing of the Sale of the Acquired Assets, the Buyer shall take title to and possession of the Acquired Assets free and clear of all Interests of any kind or nature whatsoever, with any such Interests to attach to the proceeds of the Sale that are ultimately attributable to the Acquired Assets, subject to the terms of such Interests, with the same validity, force and effect, and in the same order of priority that such Interests now have against the Acquired Assets or their proceeds, subject to any rights, claims and defenses that the Debtor, the Trustee or the Estate, as applicable, may possess with respect thereto.

10.      Except as expressly permitted or otherwise specifically provided by the APA or this Order, all person(s) holding Interests in or to the Acquired Assets arising under or out of, in connection with, or in any way relating to the Debtor or the Acquired Assets, prior to the transfer of the Acquired Assets to the Buyer, hereby are forever barred, estopped and permanently enjoined from asserting against the Buyer or its successor or assigns, its property, or the Assets, such person(s)' Interest, rights of recoupment, or set-off in the Acquired Assets.

11.      If any person that has filed statements or other documents or agreements evidencing Interests in or to the Acquired Assets shall not have delivered to the Trustee prior to the closing of the Sale, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of liens and easements, or any other documents necessary for the purpose of documenting the release of all Interests which the person has or may assert respecting the Acquired Assets, the Trustee is hereby authorized and directed,

and the Buyer is hereby authorized, to execute and file such statements, instruments, releases and other documents on behalf of such person with respect to the Acquired Assets.

12.     Notwithstanding Bankruptcy Rule 6004(h), this Order shall be effective immediately upon entry and the Trustee and the Buyer are authorized to close the Sale immediately upon entry of this Order, notwithstanding any otherwise applicable waiting period.

13.     Except as otherwise provided in the APA, the Acquired Assets shall be sold, transferred and delivered to Buyer on an "as is, where is" and "with all faults" basis.

14.     The APA and any related agreements, documents or other instruments may be modified, amended or supplemented by the Buyer and the Trustee without further order of the Court, provided that any such modification, amendment or supplement does not materially change the terms of the APA or modify the express terms of this Order.

15.     This Order is and shall be binding upon and govern the acts of all persons, including, without limitation all filing agents, filing officers, title agents, title companies, recorders of mortgages or deeds, administrative agencies, governmental departments, secretaries of state, federal and local officials, and all other persons who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments; and each of the foregoing persons is hereby directed to accept for filing any and all of the documents and instruments necessary and appropriate to consummate the transactions contemplated by the APA.

16.    This Court retains jurisdiction, pursuant to its statutory powers under 28 U.S.C. § 157(b)(2), to, among other things, interpret, implement, and enforce the terms and provisions of this Order, the APA, related agreements, and all amendments thereto and any waivers and consents thereunder.

Dated:  New York, New York
        December 11, 2014

                              /s/ Sean H. Lane
                              UNITED STATES BANKRUPTCY JUDGE

9

EXHIBIT A

## ASSET PURCHASE AGREEMENT

This ASSET PURCHASE AGREEMENT (this "**Agreement**"), made this _____ day of _____, 2014, is by and between **Jil Mazer-Marino**, not individually but as trustee for the chapter 7 bankruptcy estate of **Hukkster, Inc.**, a Delaware limited liability company and Jet.com, Inc., a Delaware corporation having a principal place of business at 353 Bloomfield Avenue, Montclair, New Jersey 07042 ("**Buyer**").

### WITNESSETH:

**WHEREAS**, on August 27, 2014 (the "**Petition Date**"), Hukkster, Inc. ("**Hukkster**" or the "**Debtor**") filed a voluntary petition for relief under chapter 7, title 11 of the United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**"), Case No. 14-12464 (SHL);

**WHEREAS**, on August 27, 2014, Jil Mazer-Marino (the "Trustee" or "Seller"), was appointed as interim chapter 7 Trustee for the Debtor;

**WHEREAS**, an order establishing notice, bidding and auction procedures (the "**Bid Procedures Order**") was entered by the Bankruptcy Court on October 16, 2014;

**WHEREAS**, Trustee desires to sell to Buyer, and Buyer desires to purchase from Seller, the Acquired Assets (defined below), subject to and in accordance with the terms and conditions of this Agreement and the Bid Procedures Order.

**NOW, THEREFORE**, in consideration of the promises and the mutual covenants hereinafter set forth, the parties hereto agree as follows:

### ARTICLE 1. PURCHASE AND SALE OF ASSETS

Section 1. <u>Sale of Assets</u>. Subject to and in accordance with the terms of this Agreement and entry of the Sale Order (defined in <u>Article 9. Section 2</u>), Seller agrees to sell, transfer and deliver to Buyer, and Buyer agrees to buy from Seller, all of Seller's right, title and interest in and to the assets listed on Schedule 1.1 attached hereto (collectively, the "**Acquired Assets**"). Seller is transferring, selling and delivering only the Acquired Assets and is not transferring, selling or delivering any other asset of whatever nature. All such other assets, including those assets listed on Schedule 1.2 attached hereto, shall be retained by and remain assets of the Debtor's estate. All such assets not being sold or assigned are herein referred to as the "**Excluded Assets**."

Section 2. <u>Assumption of Liabilities</u>. At the Closing, Buyer shall assume, and Buyer hereby agrees to thereafter pay, perform and discharge when due, only the following liabilities (the "**Assumed Liabilities**"):

(a) all liabilities of Seller for Transaction Taxes (defined in Article 6. Section I) payable in connection with the transactions contemplated by this Agreement; and

(b) all liabilities and obligations arising on or after the Closing Date (defined in <u>Article 3, Section 1</u>). other than successor liability claims, relating to or arising out of the Acquired Assets.

Section 3. <u>Retention of Liabilities</u>. Buyer is assuming only the Assumed Liabilities and is not assuming any other liability or obligation of whatever nature, whether presently in existence or arising hereafter. All such other liabilities and obligations shall be retained by and remain liabilities and obligations of the Debtor's estate (all such liabilities and obligations not being assumed are herein referred to as the "**Excluded Liabilities**").

## ARTICLE 2. CONSIDERATION

Section 1. <u>Consideration</u>. The aggregate consideration for the sale and transfer of the Acquired Assets is (a) sixty five thousand dollars ($65,000) in cash (the "**Purchase Price**"), which shall be payable and deliverable on Closing in accordance with <u>Article 3. Section 3</u> herein; and (b) the assumption by Buyer of the Assumed Liabilities.

Section 2. <u>Deposit</u>. Concurrently with the execution and delivery of this Agreement, Buyer shall, by wire transfer of immediately available funds, transfer to the Seller an aggregate amount equal to three thousand five hundred dollars ($3,500) which, when added to the three thousand dollars ($3,000) previously transferred to Seller, represents ten percent (10%) of the Purchase Price (such amount, together with all interest earned thereon, if any, the "**Deposit**"), to be held by the Seller in a separate segregated account in accordance with the terms and provisions of this Agreement. If this Agreement is terminated without the Closing occurring, the Deposit shall be disbursed in accordance with <u>Article 8. Section 2</u>. If the Closing occurs, the Deposit shall be applied (with interest if any) to the Purchase Price.

## ARTICLE 3. CLOSING AND DELIVERIES

Section 1. <u>Closing</u>. The consummation of the transactions contemplated hereby (the "**Closing**") shall take place, within fifteen (15) Business Days after entry of the Sale Order, or as otherwise may be agreed to by the parties hereto (the "**Closing Date**"), at the offices of Sellers' counsel or at a place otherwise agreed upon by the parties.

Section 2. <u>Seller's Deliveries</u>. At the Closing, Seller shall deliver to Buyer:

(a)     bills of sale, endorsements, assignments and other instruments of transfer and conveyance necessary to effect the sale, transfer, and assignment of the Acquired Assets to Buyer that are consistent with the terms of this Agreement and reasonably satisfactory in form and substance to counsel for Buyer;

(b)     possession of the Acquired Assets (to the extent physically deliverable); and

(c)     a copy of the Sale Order as entered on the docket of the Debtors' bankruptcy cases.

Section 3. <u>Buyer's Deliveries</u>. At the Closing:

(a)    Buyer shall pay to Seller the Purchase Price (less the Deposit) by wire transfer of immediately available funds in accordance with wire instructions provided by Seller; and

(b)    Buyer shall execute and deliver to Seller an instrument of assumption of liabilities with respect to the Assumed Liabilities reasonably satisfactory in form and substance to counsel for Seller. Buyer and Seller may agree that Article 1, Section 2 hereof may stand in lieu of a separate instrument.

**ARTICLE 4**. REPRESENTATIONS AND WARRANTIES

Section 1. <u>Representations and Warranties of Seller</u>. Seller represents and warrants to Buyer as follows:

(a) <u>Authorization and Validity</u>. Seller has all power and authority to enter into this Agreement and, subject to the Bankruptcy Court's entry of the Sale Order, to carry out its obligations hereunder and thereunder. Subject to the Bankruptcy Court's entry of the Sale Order, the execution and delivery of this Agreement and the performance of the obligations hereunder have been duly authorized by all necessary corporate action of Seller, and no other action on the part of Seller is necessary to authorize such execution, delivery and performance. This Agreement has been duly executed by Seller and, subject to Bankruptcy Court approval, constitutes Seller's valid and binding obligations, enforceable against Seller in accordance with the terms hereof.

Section 2. Representations and Warranties of Buyer. Buyer hereby represents and warrants to Seller as follows:

(a)    <u>Corporate Organization</u>. Buyer is a Delaware corporation, validly existing and in good standing under the laws of the jurisdiction of its incorporation, and has all requisite power and authority to own its properties and assets.

(b)    <u>Authorization and Validity of Agreement</u>. Buyer has all requisite power and authority to enter into this Agreement and to carry out its obligations hereunder. The execution and delivery of this Agreement and the performance of Buyer's obligations hereunder have been duly authorized by all necessary action by the board of directors (or equivalent) of Buyer, and no other action on the part of Buyer is necessary to authorize such execution, delivery and performance. This Agreement has been duly executed by Buyer and constitutes the valid and binding obligations of Buyer, enforceable against Buyer in accordance with its terms.

(c)    <u>No Conflict or Violation</u>. The execution, delivery and performance by Buyer of this Agreement does not and will not violate or conflict with any provision of the organizational documents of Buyer and does not and will not violate any provision of law, or any order applicable to Buyer, nor will it result in a breach of or constitute (with due notice or lapse of time or both) a default under any contract to which Buyer is a party or by which it is bound or to which any of its properties or assets is subject.

(d)    <u>Consents and Approvals</u>. The execution, delivery and performance of this Agreement by Buyer does not and will not require the consent or approval of, or filing with, any government or any other Person except (i) as may be required to be obtained by Buyer after the Closing in order to own or operate any of the Acquired Assets; (ii) entry of the Sale Order by the Bankruptcy Court; or (iii) for such consents, approvals and filings, of which the failure to obtain or make would not, individually or in the aggregate, have a Material Adverse Effect on the ability of Buyer to consummate the transactions contemplated hereby.

(e)    <u>Investigation by Buyer</u>. Buyer has conducted its own independent review and analysis of the Acquired Assets and the Assumed Liabilities. Buyer has conducted its own independent review of all orders of, and all motions, pleadings, and other submissions to, the Bankruptcy Court in connection with the Debtors' bankruptcy cases. In entering into this Agreement, Buyer has relied upon its own investigation and analysis as well as Seller's representations and warranties contained in Article 4.1(b) (which are subject to the limitations and restrictions contained in this Agreement), and Buyer (i) acknowledges that neither Seller, the Debtor, nor any of their respective Affiliates or Related Persons makes or has made any representation or warranty, either express or implied, as to the accuracy or completeness of any of the information provided or made available to Buyer or its Affiliates or Related Persons, except for the representations and warranties contained in this Agreement (which are subject to the limitations and restrictions contained in this Agreement); and (ii) agrees, to the fullest extent permitted by law, that none of Seller, the Debtors, nor their respective Affiliates or any of their respective Related Persons shall have any liability or responsibility whatsoever to Buyer or its Affiliates or Related Persons on any basis (including, without limitation, in contract or tort, under federal or state securities laws or otherwise) based upon any information provided or made available, or statements made, to Buyer or its Affiliates or Related Persons (or any omissions therefrom), except for Seller's representations and warranties contained in this Agreement and, with respect to such representations and warranties, subject to the limitations and restrictions contained in this Agreement.

Section 3. <u>Warranties Exclusive</u>. The parties acknowledge that the representations and warranties contained in Article 4 are the only representations or warranties given by the parties and that all other express or implied warranties are disclaimed. Without limiting the foregoing, Buyer acknowledges that the Acquired Assets are conveyed "AS IS", "WHERE IS" and "WITH ALL FAULTS" and that ALL WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE ARE DISCLAIMED. WITHOUT LIMITING THE FOREGOING, BUYER ACKNOWLEDGES THAT NEITHER SELLER, THE DEBTORS NOR THEIR RESPECTIVE AFFILIATES AND THEIR RESPECTIVE RELATED PERSONS HAVE MADE ANY REPRESENTATION OR WARRANTY CONCERNING (I) ANY USE TO WHICH THE ACQUIRED ASSETS MAY BE PUT, (II) ANY FUTURE REVENUES, COSTS, EXPENDITURES, CASH FLOW, RESULTS OF OPERATIONS, FINANCIAL CONDITION OR PROSPECTS THAT MAY RESULT FROM THE OWNERSHIP, USE OR SALE OF THE ACQUIRED ASSETS OR THE ASSUMPTION OF THE ASSUMED LIABILITIES, (III) ANY OTHER INFORMATION OR DOCUMENTS MADE AVAILABLE TO BUYER OR ITS AFFILIATES OR RELATED PERSONS OR (IV) THE CONDITION OF THE ACQUIRED ASSETS INCLUDING, WITHOUT LIMITATION, COMPLIANCE WITH ANY FEDERAL OR OTHER LAWS.

Section 4. <u>Survival of Representations and Warranties</u>. None of the representations or warranties of Seller or Buyer set forth in this Agreement or in any certificate delivered pursuant to <u>Article 7, Sections 1(a) or 2(a)</u> shall survive the Closing. The parties hereto agree that the representations and warranties of Seller contained in this Agreement shall terminate upon the Closing or upon the earlier termination of this Agreement pursuant to <u>Article 8, Section 1</u> and neither Seller nor Buyer shall have any liability for any breach thereof from and after such termination.

## ARTICLE 5. COVENANTS AND OTHER AGREEMENTS

Section 1. <u>Covenants of Seller and Buyer</u>.

(a)     <u>Covenants of Seller</u>.

(i)     <u>Approvals</u>. Seller shall use all commercially reasonable efforts to take, or cause to be taken, all actions, and to do, or cause to be done, all things necessary or proper, consistent with applicable law, to consummate and make effective in an expeditious manner the transactions contemplated hereby.

(ii)     <u>Further Assurances</u>. At the request and the sole expense of Buyer, at any time after the Closing Date, Seller or its designee, on behalf of Seller, shall execute and deliver such documents as Buyer or its counsel may reasonably request to effectuate the purposes of this Agreement.

(b)     <u>Covenants of Buyer</u>.

(i)     <u>Approvals.</u> Buyer shall use all commercially reasonable efforts to (A) obtain all consents and approvals of all governments, and all other Persons, required to be obtained by Buyer to effect the transactions contemplated by this Agreement, and (B) take, or cause to be taken, all action, and to do, or cause to be done, all things necessary or proper, consistent with applicable law, to consummate and make effective in an expeditious manner the transactions contemplated hereby.

(ii)     <u>Personally Identifiable Information</u>. In connection with its purchase of the Acquired Assets which contain personally identifiable information within the meaning of section 363(b) of the Bankruptcy Code, Buyer agrees to: (A) assume all obligations set forth in the Debtor's privacy policy as in effect as of the Petition Date; (B) to abide by all applicable laws and regulations with respect to such information; and (C) to take such additional reasonable actions as may be agreed between Seller and Buyer.

## ARTICLE 6. TAXES

Section 1. <u>Taxes Related to Purchase of Assets</u>. All federal, state and local sales and transfer taxes, including, without limitation, all state and local taxes in connection with the transfer of the Acquired Assets, and all recording and filing fees (collectively, "**Transaction Taxes**") that may be imposed by reason of the sale, transfer, assignment and delivery of the

Acquired Assets shall be paid by Buyer. Transaction Taxes do not include any tax in the nature of an income tax, including without limitation, any capital gains, franchise, excise, inheritance, estate, succession, or gift taxes. Buyer and Seller agree to cooperate to minimize any such Transaction Taxes and to determine appropriate taxing authorities and amount of Transaction Taxes, if any, payable in connection with the transactions contemplated under this Agreement. Seller agrees to assist Buyer reasonably in the preparation and filing of any and all required returns for or with respect to such Transaction Taxes with any and all appropriate taxing authorities.

Section 2. <u>Cooperation on Tax Matters.</u>

(a)    Buyer and Seller agree to furnish, or cause to be furnished to each other, (including the execution and delivery of appropriate powers of attorney) as promptly as practicable, such information and assistance relating to the Acquired Assets and the Assumed Liabilities as is reasonably necessary for the preparation and filing of any Tax Return, claim for refund or other filings as required by law relating to tax matters, for the preparation for and proof of facts during any tax audit, for the preparation for any tax protest, for the prosecution or defense of any suit or other proceeding relating to tax matters and for the answer to any governmental or regulatory inquiry relating to tax matters.

(b)    Buyer agrees to retain possession, at its own expense, of all accounting, business, financial and tax records and information (i) relating to the Acquired Assets or the Assumed Liabilities that are in existence on the Closing Date and transferred to Buyer hereunder and (ii) coming into existence after the Closing Date that relate to the Acquired Assets or the Assumed Liabilities before the Closing Date, for a period of at least six (6) years from the Closing Date, and will give Seller (or Seller's designated successor) notice and an opportunity to retain any such records in the event that Buyer determines to destroy or dispose of them after such period. In addition, from and after the Closing Date, Buyer agrees that it will provide access to Seller, Seller's designated successor and their respective attorneys, accountants and other representatives (after reasonable notice and during normal business hours and without charge) to the books, records, documents and other information relating to the Acquired Assets or the Assumed Liabilities as Seller or Seller's designated successor may reasonably deem necessary to (x) properly prepare for, file, prove, answer, prosecute and/or defend any such Tax Return, claim, filing, tax audit, tax protest, suit, proceeding or answer or (y) administer or complete the Debtor's bankruptcy case. Such access shall include, without limitation, access to any computerized information retrieval systems relating to the Acquired Assets or the Assumed Liabilities.

Section 3. <u>Allocation of Purchase Price and Purchase Price Allocation Forms.</u> The Purchase Price and the Assumed Liabilities will be allocated among the Acquired Assets in accordance with the allocation of the Purchase Price (the "**<u>Allocation</u>**") set forth on Schedule 6.3 to be delivered by Buyer, or Buyer's designated successor, to Seller no later than one (1) business day prior to the Closing. Any adjustments to the Purchase Price shall result in an adjustment to the Allocation in accordance with section 1060 of the Code and the Treasury Regulations thereunder. The Allocation, as so adjusted, shall be binding on the parties for all purposes. Seller and Buyer agree that the transaction will be treated as an asset acquisition for tax purposes. Seller and Buyer will cooperate in filing with the Internal Revenue Service their respective

Forms 8594, including any required amendments or supplements thereto, as provided for in section 1060 of the Code and the Treasury Regulations issued thereunder on a basis consistent with the Allocation, and the Allocation shall be reflected on any Tax Returns required to be filed. Neither Seller, Seller's designated successor, nor Buyer shall, nor shall they permit their respective Affiliates to, take any position inconsistent with the Form 8594, as appropriately adjusted.

**ARTICLE 7.** CONDITIONS PRECEDENT TO PERFORMANCE BY PARTIES

Section 1. <u>Conditions Precedent to Performance by Seller</u>. The obligation of Seller to consummate the transactions contemplated by this Agreement is subject to the fulfillment, at or before the Closing Date, of the following conditions, any one or more of which (other than the condition contained in Article 7, Section IfcT) may be waived by Seller in its sole discretion:

(a)      <u>Representations and Warranties of Buyer</u>. All representations and warranties made by Buyer in Article 4. Section 2 shall be accurate in all material respects on and as of the Closing Date as if again made by Buyer on and as of such date, except for inaccuracies that do not result in a material adverse effect on Buyer's ability to perform its obligations hereunder.

(b)      <u>Performance of the Obligations of Buyer</u>. Buyer shall have performed in all material respects all obligations required under this Agreement to be performed by it on or before the Closing Date.

(c)      <u>Consents and Approvals</u>. The Bankruptcy Court shall have entered the Sale Order and no order staying, reversing, modifying or amending the Sale Order shall be in effect on the Closing Date.

(d)      <u>No Violation of Orders</u>. No preliminary or permanent injunction or other order that declares this Agreement invalid or unenforceable in any respect or which prevents the consummation of the transactions contemplated hereby shall be in effect.

Section 2. <u>Conditions Precedent to the Performance by Buyer</u>. The obligations of Buyer to consummate the transactions contemplated by this Agreement are subject to the fulfillment, at or before the Closing Date, of the following conditions, any one or more of which (other than the condition contained in Article 7. Section 2(c)) may be waived by Buyer in its sole discretion:

(a)      <u>Representations and Warranties of Seller</u>. All representations and warranties made by Seller in Article 4, Section 1 shall be accurate in all material respects on and as of the Closing Date as if again made by Seller on and as of such date, except for inaccuracies that do not result in a Material Adverse Effect.

(b)      <u>Performance of the Obligations of Seller</u>. Seller shall have performed in all material respects all obligations required under this Agreement to be performed by it on or before the Closing Date.

(c)     Consents and Approvals. The Bankruptcy Court shall have entered the Sale Order, in form and substance satisfactory to Buyer, and no order staying, reversing, modifying or amending the Sale Order shall be in effect on the Closing Date.

(d) No Violation of Orders. No preliminary or permanent injunction or other order that declares this Agreement invalid in any respect or prevents the consummation of the transactions contemplated hereby shall be in effect.

## ARTICLE 8. TERMINATION

Section 1. Termination. This Agreement may be terminated at any time prior to the Closing Date by either Seller or Buyer if, other than through a default hereunder by the other party hereto:

(a)     by either Seller or Buyer if the Closing shall not have occurred by December 31, 2014; provided that Buyer may not terminate this agreement if such deadline shall have been missed on account of a default hereunder by Buyer, and provided further, however, that the Closing deadline in this subsection may be extended by Seller and Buyer upon mutual agreement;

(b)     by Seller if Buyer shall have breached any of its representations, warranties, covenants or agreements contained in this Agreement which would give rise to the failure of a condition set forth in **Article 7**, which breach cannot be or has not been cured within ten (10) Business Days after the giving of written notice by Seller to Buyer specifying such breach in reasonable detail;

(c)     by Buyer if Seller shall have breached any of its representations, warranties, covenants or agreements contained in this Agreement which would give rise to the failure of a condition set forth in Article 7, which breach cannot be or has not been cured within ten (10) Business Days after the giving of written notice by Buyer to Seller specifying such breach in reasonable detail; or

(d)     by the mutual written consent of Seller and Buyer.

Section 2. Effect of Termination. In the event of termination of this Agreement as provided in Article 8, Section 1, this Agreement shall forthwith become void and there shall be no liability on the part of either party other than for the return of the Deposit to Buyer with any interest thereon; provided, however, (i) if the Agreement is terminated under Article 8, Section 1 (a) and the Closing deadline was missed on account of default under this Agreement by Buyer, Seller shall retain the Deposit and all interest thereon, if any, in addition to any other rights Seller may have against Buyer; and (ii) if the Agreement is terminated under Article 8, Section 1(c) and Seller is not in breach of the Agreement, Seller shall retain the Deposit and all interest thereon, if any, in addition to any other rights Seller may have against Buyer. The return of the Deposit by Seller shall be Buyer's sole remedy in the event of a termination by Buyer.

**ARTICLE 9**. BANKRUPTCY COURT MATTERS

Section 1. <u>Bankruptcy Code 363(b) and (f)</u>. The sale contemplated by this Agreement is to be made in accordance with the provisions of Bankruptcy Code sections 363(b) and (f), with the Acquired Assets being sold free and clear of all liens, claims, interests and encumbrances of whatever kind or nature (the "**Interests**"), but subject to the Assumed Liabilities, with such Interests, if any to attach to the net proceeds of sale.

Section 2. <u>Sale Order</u>. Buyer acknowledges that this Agreement and the transactions contemplated herein are subject to entry of an order approving this Agreement and authorizing the sale of the Acquired Assets free and clear of all Interests (the "Sale Order") and this Agreement is of no force or effect as to Seller prior to entry of the Sale Order. Buyer agrees that it will promptly take such actions as are reasonably requested by Seller to assist Seller in obtaining entry of the Sale Order, including furnishing affidavits or other documents or information for filing with the Bankruptcy Court for the purposes, among others, of demonstrating that Buyer is a "good faith" purchaser under section 363(m) or any other section of the Bankruptcy Code and that the Purchase Price was not controlled by an agreement in violation of section 363(n) or any other section of the Bankruptcy Code. The Sale Order proposed by Seller to the Bankruptcy Court shall provide that it shall be effective and enforceable immediately upon entry by the Bankruptcy Court notwithstanding rule 6004(d) of the Federal Rules of Bankruptcy Procedure.

Section 3. <u>Buyer's Back-Up Commitment</u>. If a competing transaction is approved by the Bankruptcy Court with a bidder or bidders other than Buyer and Buyer has submitted the second highest or best bid for the Acquired Assets, then Buyer shall remain bound to this Agreement, on its existing terms and at the purchase price bid by Buyer at the auction as a back¬up bid pursuant to the Bid Procedures Order, unless and until the Competing Transaction is consummated or, if earlier, until the Closing Date deadline set forth in Article 8, section 1(a).

**ARTICLE 10**. MISCELLANEOUS

Section 1. <u>Successors and Assigns</u>. Except as otherwise provided in this Agreement, no party hereto shall assign this Agreement or any rights or obligations hereunder without the prior written consent of the other party hereto, and any such attempted assignment without such prior written consent shall be void and of no force and effect. This Agreement shall inure to the benefit of and shall be binding upon the successors and permitted assigns of the parties hereto, specifically including, without limitation, the designated successor of Seller.

Section 2. <u>Governing Law; Jurisdiction</u>. This Agreement shall be construed, performed and enforced in accordance with, and governed by, the laws of the State of New York (without giving effect to the principles of conflicts of laws thereof), except to the extent that the laws of such State are superseded by Federal Law. The parties hereto irrevocably elect as the sole judicial forum for the adjudication of any matters or disputes arising under or in connection with the Agreement, and consent to the exclusive personal and subject matter jurisdiction of, the Bankruptcy Court.

Section 3. <u>Expenses</u>. Each of the parties hereto shall pay its own expenses in connection with this Agreement and the transactions contemplated hereby, including, without limitation, any legal and accounting fees, whether or not the transactions contemplated hereby are consummated, subject to Article 9. Buyer shall pay the cost of all fees, costs, and expenses associated with recording any assignment of the Acquired Assets.

Section 4. <u>Broker's and Finder's Fees</u>. Each of the parties represent and warrant that it has dealt with no broker or finder in connection with any of the transactions contemplated by this Agreement, and, insofar as such party knows, no broker or Person is entitled to any commission, finder's fee or similar payment in connection with any of these transactions.

Section 5. <u>Severability</u>. In the event that any part of this Agreement is declared by any court or other judicial or administrative body to be null, void or unenforceable, said provision shall survive to the extent it is not so declared, and all of the other provisions of this Agreement shall remain in full force and effect only if, after excluding the portion deemed to be unenforceable, the remaining terms shall provide for the consummation of the transactions contemplated hereby in substantially the same manner as originally set forth at the later of the date this Agreement was executed or last amended.

Section 6. <u>Notices</u>.

(a) All notices, requests, demands and other communications under this Agreement shall be in writing and shall be deemed to have been duly given: (i) on the date of service, if served personally on the party to whom notice is to be given; (ii) on the day of transmission, if sent via facsimile transmission to the facsimile number given below, and telephonic confirmation of receipt is obtained promptly after completion of transmission, if prior to 3:00 p.m. on a Business day, and otherwise on the next Business Day; (iii) on the Business Day after delivery to Federal Express or similar overnight courier or the Express Mail service maintained by the United States Postal Service providing for delivery on such Business Day and the procuring of a signed receipt; or (iv) on the fifth day after mailing, if mailed to the party to whom notice is to be given, by first class mail, registered or certified, postage prepaid and properly addressed, to the party as follows:

If to Seller:

Jil Mazer-Marino, Chapter 7 Trustee
c/o Meyer, Suozzi, Engish & Klein, P.C.
990 Stewart Avenue
P.O. Box 9194
Garden City, New York 11530-9194
Facsimile: 516-741-6706

If to Buyer:

Jet.com, Inc.
353 Bloomfield Avenue
Montclair, New Jersey 07042
Attn: Andrew Gasper, General Counsel

Copy to:

Warren E. Friss, Esq.
Ingram Yuzek Gainen Carroll & Bertolotti, LLP
250 Park Avenue
New York, New York 10177

(b) Any party may change its address for the purpose of this Article 10. Section 6 by giving the other party written notice of its new address in the manner set forth above.

Section 7. Amendments; Waivers. This Agreement may be amended or modified, and any of the terms, covenants, representations, warranties or conditions hereof may be waived, only by a written instrument executed by the parties hereto, or in the case of a waiver, by the party waiving compliance. Any waiver by any party of any condition, or of the breach of any provision, term, covenant, representation or warranty contained in this Agreement, in any one or more instances, shall not be deemed to be or construed as a further or continuing waiver of any such condition, or of the breach of any other provision, term, covenant, representation or warranty of this Agreement.

Section 8. Entire Agreement. This Agreement contains the entire understanding between the parties hereto with respect to the transactions contemplated hereby and supersedes and replaces all prior and contemporaneous agreements and understandings, oral or written, with regard to such transactions. All schedules hereto and any documents and instruments delivered pursuant to any provision hereof are expressly made a part of this Agreement as fully as though completely set forth herein.

Section 9. No Third Party Beneficiaries. Nothing in this Agreement is intended to or shall confer any rights or remedies under or by reason of this Agreement on any Persons other than Seller, Seller's designated successor and Buyer and their respective successors and permitted assigns. Nothing in this Agreement is intended to or shall relieve or discharge the obligations or liability of any third Persons to Seller, Seller's designated successor or Buyer. This Agreement is not intended to nor shall it give any third Persons any right of subrogation or action over or against Seller or Buyer.

Section 10. Headings, Interpretation, Gender. Words used herein, regardless of the number and gender specifically used, shall be deemed and construed to include any other number, singular or plural, and any other gender, masculine, feminine, or neuter, as the context requires. Whenever the words "include," "includes" or "including" are used in this Agreement, they shall be deemed followed by the words "without limitation." Neither this Agreement nor any uncertainty or ambiguity herein shall be construed or resolved against Buyer or Seller, whether under any rule of construction or otherwise. No party to this Agreement shall be

considered the draftsman. On the contrary, this Agreement has been reviewed, negotiated and accepted by all parties and their attorneys and shall be construed and interpreted according to the ordinary meaning of the words so as fairly to accomplish the purposes and intentions of all the parties. The captions and section headings contained in this Agreement are for convenience of reference only, do not form a part of this Agreement and shall not affect in any way the meaning or interpretation of this Agreement. All references in this Agreement to "Section" or "Article" shall be deemed to be references to a Section or Article of this Agreement. All references to "herein" or "hereof or "hereunder" and similar phrases shall be broadly construed to refer to the entire Agreement and not merely to the specific clause, section, or article.

Section 11. Counterparts. This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which shall constitute the same instrument. Delivery of an executed counterpart to this Agreement by facsimile or .pdf shall have the same force and effect as delivery of an original executed counterpart of this Agreement.

Section 12. Further Action. Pending the Closing, the parties hereto shall use all reasonable efforts to take, or cause to be taken, all appropriate action, to do or cause to be done all things necessary, proper or advisable under applicable law as may be consistent with the terms of this Agreement, or required to carry out the provisions of this Agreement and consummate and make effective the transactions contemplated by this Agreement, including without limitation the transfer and assignment of the Acquired Assets.

## ARTICLE 11. DEFINITIONS

Section 1. Certain Terms Defined. As used in this Agreement, the following terms which are not otherwise defined above, shall have the following meanings:

"Affiliate" means, with respect to any Person, any Person directly or indirectly controlling, controlled by or under direct or indirect common control with such other Person.

"Business Day" means any day other than Saturday, Sunday and any day that is a legal holiday or a day on which banking institutions in New York, New York are authorized by law or other governmental action to close.

"Code" means the Internal Revenue Code of 1986, as amended.

"IRS" means the Internal Revenue Service.

"Material Adverse Effect" means a state of facts, event, change or effect that results in a material adverse effect on the value of the Acquired Assets taken as a whole and considering the reasonable prospects of monetizing the full value of the Acquired Assets, but excludes any state of facts, event, change or effect caused by events, changes or developments relating to (A) changes in economic, regulatory or political conditions generally; or (B) any hostilities, acts of war, military actions, sabotage or terrorism.

"Person" means any individual, corporation, partnership, joint venture, limited liability company, association, joint-stock company, trust, unincorporated organization or government.

"Related Person" means, with respect to any Person, all past, present and future directors, officers, members, managers, stockholders, employees, controlling persons, agents, professionals, attorneys, accountants, investment bankers or representatives of any such Person.

"Tax Return" means any report, return, information return, filing or other information, including any schedules, exhibits or attachments thereto, and any amendments to any of the foregoing required to be filed or maintained in connection with the calculation, determination, assessment or collection of any taxes (including estimated taxes).

[Signatures are on the following page.]

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed by their respective officers thereunto duly authorized as of the date first above written.

Jil Mazer-Marino, Chapter 7 Trustee for Hukkster, Inc., as Seller

By:_____
    Name: Jil Mazer-Marino
    Title: Chapter 7 Trustee

Jet.com, Inc., as Buyer

By:_____
    Name: **Andrew Gasper**
    Title: **SVP & General Counsel**

## SCHEDULES

Schedule 1.1 -Acquired Assets

All assets of Hukkster, except the Excluded Assets, including, without limitation:

    (i)     All copyrights, including Copyright Registration Nos. TX-7-795-116 and TXu-1-889-003;

    (ii)    Custom Python Django code base;

    (iii)   All patents and patent applications including the Patent Application "System, Method, and Program Product for Identifying Discounted Items";

    (iv)   Scraper infrastructure;

    (v)    Direct affiliate commissions and sales tracking;

    (vi)   Consumer database;

    (vii)   ioS app downloads (UDIDs); and

    (viii)  All business documents.

The following domain names:

    (i)     hukkster.co.in;

    (ii)    hukkster.co.uk;

    (iii)   hukkster.com; and

    (iv)   hukkster.it.

The following trademarks:

    (i)     HUKKSTER, U.S. Registration No.: 4,450,092; and

    (ii)    HUKK, U.S. Registration No. 4,450,093

Schedule 1.2 - Excluded Assets

All cash or Cash Equivalent

All legal claims of Seller

All accounts receivable

Schedule 6.3 - Allocation of Purchase Price